APPEAL,CLOSED,CONSOL,TYPE–E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:15–cv–00696–LLA</u>
### *Internal Use Only*

STATE OF ALABAMA v. U.S. ARMY CORPS OF
ENGINEERS et al
Assigned to: Judge Loren L. AliKhan
 Case:  1:15–cv–00699–EGS
Cause: 05:702 Administrative Procedure Act

Date Filed: 05/07/2015
Date Terminated: 03/31/2025
Jury Demand: None
Nature of Suit: 899 Administrative
Procedure Act/Review or Appeal of
Agency Decision
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**STATE OF ALABAMA**
*Alabama State Capitol*

represented by **John Aaron Earnhardt**
MAYNARD NEXSEN PC
1901 Sixth Avenue North
Suite 1700
Birmingham, AL 35203
205–254–1000
Fax: 205–254–1999
Email: jearnhardt@maynardcooper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Lynn Brasher**
OFFICE OF THE ATTORNEY
GENERAL
501 Washington Avenue
Montgomery, AL 36104
(334) 353–2609
Fax: (334) 242–4891
Email: abrasher@ago.state.al.us
*TERMINATED: 11/06/2019*
*ATTORNEY TO BE NOTICED*

**Edmund G. LaCour , Jr**
OFFICE OF THE ATTORNEY
GENERAL/AL
PO BOX 300152
501 Washington Ave
Montgomery, AL 36130–0152
334–353–2196
Email: edmund.lacour@alabamaag.gov
*ATTORNEY TO BE NOTICED*

**John C. Neiman , Jr**
MAYNARD NEXSEN PC
1901 Sixth Avenue North

Suite 1700
Birmingham, AL 35203
205–254–1000
Fax: 205–254–1999
Email: jneiman@maynardnexsen.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ALABAMA POWER COMPANY**          represented by   **C. Frederick Beckner , III**
*15cv699*                                          SIDLEY AUSTIN LLP
                                                   1501 K Street, NW
                                                   Washington, DC 20005
                                                   (202) 736–8874
                                                   Fax: (202) 736–8711
                                                   Email: rbeckner@sidley.com
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **James A. Byram , Jr.,**
                                                   BALCH & BINGHAM LLP
                                                   105 Tallapoosa St.
                                                   Suite 200
                                                   Montgomery, AL 36104
                                                   (334) 269–3159
                                                   Fax: (334) 269–3115
                                                   Email: jbyram@balch.com
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Thomas L. Casey , III**
                                                   BALCH & BINGHAM, LLP
                                                   1901 Sixth Avenue North
                                                   Suite 1500
                                                   Birmingham, AL 35203
                                                   (205) 251–8100
                                                   Fax: (205) 488–5756
                                                   Email: tcasey@balch.com
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Peter Douglas Keisler**
                                                   20 Magnolia Parkway
                                                   Chevy Chase, MD 20815
                                                   240–429–9834
                                                   Email: PDKeisler@gmail.com
                                                   *TERMINATED: 12/29/2021*

V.

**Intervenor Plaintiff**

                                                   represented by

**WATER WORKS & SANITARY SEWER BOARD OF THE CITY OF MONTGOMERY, ALABAMA**

**Patrick L.W. Sefton**
CAPELL & HOWARD, P.C.
P.O. Box 2069
Montgomery, AL 36102–2069
334–241–8000
Fax: 334–323–8888
Email: Pat.Sefton@chlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Earl Sasser**
SASSER, SEFTON, & BROWN P.C.
445 Dexter Avenue
Suite 8050
Montgomery, AL 36104
(334) 532–3400
Fax: (334) 532–3434
Email: rsasser@sasserlawfirm.com
*TERMINATED: 12/02/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Plaintiff**

**BOARD OF WATER AND SEWER COMMISSIONERS OF THE CITY OF MOBILE**
*TERMINATED: 09/23/2024*

represented by **Frank G. Taylor**
THE ATCHISON FIRM, P.C.
411 Azalea Road
Mobile, AL 36609
251–665–7200
Fax: 251–665–7250
Email: frank.taylor@atchisonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael M. Linder , Jr.**
LANIER, FORD, SHAVER, & PAYNE, P.C.
PO Box 2087
Huntsville, AL 35804–2087
256–535–1100
Email: mml@lanierford.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Earl Sasser**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Plaintiff**

**LAKE MARTIN RESOURCE ASSOCIATION, INC.**

represented by **Jackson Roger Sharman , III**
LIGHTFOOT, FRANKLIN & WHITE,

L.L.C.
The Clark Building
400 20th Street North
Birmingham, AL 35203
(205) 581–0789
Fax: (205) 380–9189
Email: jsharman@lightfootlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Earl Sasser**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**W. Larkin Radney , IV**
LIGHTFOOT, FRANKLIN & WHITE,
LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203–3200
205–581–0700
Email: lradney@lightfootlaw.com
*ATTORNEY TO BE NOTICED*

**William Stanley Cox**
LIGHTFOOT, FRANKLIN & WHITE
400 20th Street, North
Birmingham, AL 35203
(205) 581–0700
Fax: (205) 581–0799
Email: wcox@lightfootlaw.com
*TERMINATED: 03/27/2018*
*PRO HAC VICE*

**Intervenor Plaintiff**

**RUSSELL LANDS, INC.**          represented by     **Jackson Roger Sharman , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Earl Sasser**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**W. Larkin Radney , IV**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Stanley Cox**
(See above for address)

*TERMINATED: 03/27/2018*
*PRO HAC VICE*

V.

**Defendant**

**U.S. ARMY CORPS OF ENGINEERS**          represented by   **Angela Ellis**
DOJ–ENRD
Environment and Natural Resources
Division
150 M Street NE
Washington, DC 20002
202–305–0466
Email: angela.ellis@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elliot Higgins**
DOJ–Enrd
P.O. Box 7611
Washington, DC 20044
202–598–0240
Email: elliot.higgins@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Derrick Wayne Grace**
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252–2574
Fax: (202) 514–8780
Email: derrick.grace@usdoj.gov
*TERMINATED: 11/18/2016*

**Douglas Michael Bushey**
U.S. DEPARTMENT OF JUSTICE
Environment and Natural Resources
Division
P.O. Box 7611
Washington, DC 20044–7611
(202) 305–0733
Fax: (202) 514–8865
Email: douglas.m.bushey@usdoj.gov
*TERMINATED: 11/03/2016*

**Eileen T. McDonough**
U.S. DEPARTMENT OF JUSTICE
Environment & Natural Resources
Division

Ben Franklin Station
P.O. Box 7611
Washington, DC 20044
(202) 514–3126
Fax: (202) 353–7763
Email: eileen.mcdonough@usdoj.gov
*TERMINATED: 05/28/2020*

**Laura Williamson Duncan**
U.S. DEPARTMENT OF JUSTICE
Environment and Natural Resources
Division
C/O Usace Galveston District Office of
Counsel
2000 Fort Point Road
Rm 321
Galveston, TX 77550
202–598–1114
Email: laura.duncan@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Maureen Elizabeth Rudolph**
U.S. DEPARTMENT OF JUSTICE
ENRD/NRS
P.O. Box 7611
Washington, DC 20044
(202) 305–0479
Fax: (202) 305–0506
Email: maureen.rudolph@usdoj.gov
*TERMINATED: 10/14/2015*

**Reuben S. Schifman**
DEPARTMENT OF JUSTICE
Environment and Natural Resources
Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044
(202) 305–4224
Fax: (202) 305–0506
Email: reuben.schifman@usdoj.gov
*TERMINATED: 04/08/2022*

**Ruth Ann Storey**
U.S. DEPARTMENT OF JUSTICE
Land & Natural Resources Division
Ben Franklin Station
P.O. Box 7611
Washington, DC 20044–1420
(202) 305–0493
Fax: (202) 305–0506
Email: ruth.ann.storey@usdoj.gov

*TERMINATED: 02/27/2017*

**William E. Gerard**
U.S. DEPARTMENT OF JUSTICE
Environment & Natural Resources
Division
601 D Street, NW
Washington, DC 20004
(202) 305–0475
Email: william.gerard@usdoj.gov
*TERMINATED: 05/08/2018*

**Defendant**

**JOHN M. MCHUGH**             represented by   **Angela Ellis**
*in his offical capacity as Secretary of U.S.*             (See above for address)
*Army*                                             *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Elliot Higgins**
                                                  (See above for address)
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Derrick Wayne Grace**
                                                  (See above for address)
                                                  *TERMINATED: 11/18/2016*

                                                  **Douglas Michael Bushey**
                                                  (See above for address)
                                                  *TERMINATED: 11/03/2016*

                                                  **Eileen T. McDonough**
                                                  (See above for address)
                                                  *TERMINATED: 05/28/2020*

                                                  **Laura Williamson Duncan**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Maureen Elizabeth Rudolph**
                                                  (See above for address)
                                                  *TERMINATED: 10/14/2015*

                                                  **Ruth Ann Storey**
                                                  (See above for address)
                                                  *TERMINATED: 02/27/2017*

                                                  **William E. Gerard**
                                                  (See above for address)
                                                  *TERMINATED: 05/08/2018*

**Defendant**

**JO–ELLEN DARCY**
*in her offical capacity as Assistant*
*Secretary of U.S. Army for Civil Works*

represented by **Angela Ellis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elliot Higgins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Derrick Wayne Grace**
(See above for address)
*TERMINATED: 11/18/2016*

**Douglas Michael Bushey**
(See above for address)
*TERMINATED: 11/03/2016*

**Eileen T. McDonough**
(See above for address)
*TERMINATED: 05/28/2020*

**Laura Williamson Duncan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maureen Elizabeth Rudolph**
(See above for address)
*TERMINATED: 10/14/2015*

**Ruth Ann Storey**
(See above for address)
*TERMINATED: 02/27/2017*

**William E. Gerard**
(See above for address)
*TERMINATED: 05/08/2018*

**Defendant**

**THOMAS P. BOSTICK**
*in his official capacity as Commander*
*and Chief of Engineers for U.S. Army*
*Corps of Engineers*

represented by **Angela Ellis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elliot Higgins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Derrick Wayne Grace**
(See above for address)
*TERMINATED: 11/18/2016*

8

**Douglas Michael Bushey**
(See above for address)
*TERMINATED: 11/03/2016*

**Eileen T. McDonough**
(See above for address)
*TERMINATED: 05/28/2020*

**Laura Williamson Duncan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maureen Elizabeth Rudolph**
(See above for address)
*TERMINATED: 10/14/2015*

**Ruth Ann Storey**
(See above for address)
*TERMINATED: 02/27/2017*

**William E. Gerard**
(See above for address)
*TERMINATED: 05/08/2018*

**Defendant**

**C. DAVID TURNER**
*in his official capacity as Division
Commander for South Atlantic Division
of U.S. Army Corps of Engineers*

represented by **Angela Ellis**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Elliot Higgins**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Derrick Wayne Grace**
(See above for address)
*TERMINATED: 11/18/2016*

**Douglas Michael Bushey**
(See above for address)
*TERMINATED: 11/03/2016*

**Eileen T. McDonough**
(See above for address)
*TERMINATED: 05/28/2020*

**Laura Williamson Duncan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maureen Elizabeth Rudolph**
(See above for address)
*TERMINATED: 10/14/2015*

**Ruth Ann Storey**
(See above for address)
*TERMINATED: 02/27/2017*

**William E. Gerard**
(See above for address)
*TERMINATED: 05/08/2018*

**Defendant**

**JOHN J CHYTKA**                      represented by    **Angela Ellis**
*in his official capacity as District*                    (See above for address)
*Commander for Mobile District of U.S.*                   *LEAD ATTORNEY*
*Army Corps of Engineers*                                 *ATTORNEY TO BE NOTICED*

**Elliot Higgins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Derrick Wayne Grace**
(See above for address)
*TERMINATED: 11/18/2016*

**Douglas Michael Bushey**
(See above for address)
*TERMINATED: 11/03/2016*

**Eileen T. McDonough**
(See above for address)
*TERMINATED: 05/28/2020*

**Laura Williamson Duncan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maureen Elizabeth Rudolph**
(See above for address)
*TERMINATED: 10/14/2015*

**Ruth Ann Storey**
(See above for address)
*TERMINATED: 02/27/2017*

**William E. Gerard**
(See above for address)
*TERMINATED: 05/08/2018*

V.

**Intervenor Defendant**

**STATE OF GEORGIA**                    represented by    **Britt Cagle Grant**
OFFICE OF THE ATTORNEY
GENERAL
40 Capitol Square S.W.
Atlanta, GA 30334
(404) 651–9453
Email: bgrant@law.ga.gov
*TERMINATED: 12/20/2016*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard Allen Horder**
KAZMAREK MOWREY CLOUD
LASETER LLP
Special Assistant Attorney General for the
State of Georgia
1200 Peachtree Street, NE
Suite 600
Atlanta, GA 30309
404–812–0843
Fax: 404–812–0845
Email: rhorder@kmcllaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Alan Pinson**
OFFICE OF ATTORNEY GENERAL/GA
40 Capitol Square, SW
Atlanta, GA 30334
(404) 656–3300
Email: apinson@law.ga.gov
*TERMINATED: 01/03/2022*

**Christopher M. Carr**
STATE OF GEORGIA, OFFICE OF THE
ATTORNEY GENERAL
Attorney General for the State of Georgia
40 Capitol Square, SW
Atlanta, GA 30334
(404) 656–3300
Email: ccarr@law.ga.gov
*ATTORNEY TO BE NOTICED*

**John Curtis Allen**
KAZMAREK MOWREY CLOUD
LASETER LLP
Special Assistant Attorney General for the
State of Georgia

1200 Peachtree Street, NW
Suite 600
Atlanta, GA 30309
404–812–0839
Email: jallen@kmcllaw.com
*ATTORNEY TO BE NOTICED*

**Sarah Hawkins Warren**
OFFICE OF ATTORNEY GENERAL/GA
40 Capitol Square, SW
Atlanta, GA 30334
(404) 463–0770
Fax: (404) 416–5579
Email: swarren@law.ga.gov
*TERMINATED: 09/07/2018*

**Shelly Jacobs Ellerhorst**
KAZMAREK MOWREY CLOUD
LASETER, LLP
Special Assistant Attorney General for the
State of Georgia
1200 Peachtree Street NE
Suite 600
Atlanta, GA 30309
404–333–0748
Email: sellerhorst@kmcllaw.com
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

| | | |
|---|---|---|
| **ATLANTA REGIONAL COMMISSION** | represented by | **Christie L. Iannetta**<br>KING & SPALDING LLP<br>1700 Pennsylvania Avenue, NW<br>Suite 900<br>Washington, DC 20006<br>(202) 626––9229<br>Email: ciannetta@kslaw.com<br>*TERMINATED: 02/10/2022* |

**John L. Fortuna**
JONES FORTUNA LLP
111 New Street
Suite A
Decatur, GA 30030
404–850–3835
Email: jfortuna@jonesfortuna.com
*ATTORNEY TO BE NOTICED*

**Lewis Bondurant Jones**
JONES FORTUNA LP
111 New Street
Suite A
Decatur, GA 30030

404−850−6138
Email: ljones@jonesfortuna.com
*ATTORNEY TO BE NOTICED*

**Stephen A. McCullers**
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
(404) 572−3537
Fax: (404)572−5100
Email: smccullers@kslaw.com
*TERMINATED: 10/10/2018*

**Intervenor Defendant**

| | | |
|---|---|---|
| **COBB COUNTY MARIETTA WATER AUTHORITY** | represented by | **Christie L. Iannetta**<br>(See above for address)<br>*TERMINATED: 02/10/2022* |

**John L. Fortuna**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lewis Bondurant Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen A. McCullers**
(See above for address)
*TERMINATED: 10/10/2018*

**Amicus**

| | | |
|---|---|---|
| **ALABAMA MUNICIPAL ELECTRIC AUTHORITY** | represented by | **David A. Fitzgerald**<br>DAVISON VAN CLEVE, PC<br>2321 Fairview Avenue East<br>Suite #3<br>Seattle, WA 98102<br>202−246−1356<br>Fax: 503−241−8160<br>Email: daf@dvclaw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Jeffrey David Skinner**
ARENTFOX SCHIFF LLP
1717 K Street NW
Washington, DC 20006
202−857−6000
Fax: 202−857−6395
Email: jeffrey.skinner@afslaw.com
*TERMINATED: 06/25/2019*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/07/2015 | 1 | COMPLAINT against ALL DEFENDANTS ( Filing fee $ 400 receipt number 0090–4083927) filed by STATE OF ALABAMA. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons)(Neiman, John) (Entered: 05/07/2015) |
| 05/07/2015 | | Case Assigned to Judge Emmet G. Sullivan. (md, ) (Entered: 05/07/2015) |
| 05/08/2015 | 2 | NOTICE *of Corrected Summons* by STATE OF ALABAMA re 1 Complaint, (Neiman, John) (Entered: 05/08/2015) |
| 05/08/2015 | 3 | NOTICE *of Corrected Summons* by STATE OF ALABAMA re 1 Complaint, (Neiman, John) (Entered: 05/08/2015) |
| 05/08/2015 | 4 | NOTICE *of Corrected Summons* by STATE OF ALABAMA re 1 Complaint, (Neiman, John) (Entered: 05/08/2015) |
| 05/08/2015 | 5 | NOTICE *of Corrected Summons* by STATE OF ALABAMA re 1 Complaint, (Neiman, John) (Entered: 05/08/2015) |
| 05/08/2015 | 6 | NOTICE *of Corrected Summons* by STATE OF ALABAMA re 1 Complaint, (Neiman, John) (Entered: 05/08/2015) |
| 05/08/2015 | 7 | NOTICE *of Corrected Summons* by STATE OF ALABAMA re 1 Complaint, (Neiman, John) (Entered: 05/08/2015) |
| 05/11/2015 | | NOTICE OF ERROR re 2 Notice (Other); emailed to jneiman@maynardcooper.com, cc'd 0 associated attorneys –– The PDF file you docketed contained errors: 1. In future, attach all summonses to one docket entry. (znmw, ) (Entered: 05/11/2015) |
| 05/11/2015 | 8 | SUMMONS (6) Issued Electronically as to THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS. (znmw, ) (Entered: 05/11/2015) |
| 05/27/2015 | 9 | REQUEST FOR SUMMONS TO ISSUE *as to US Attorney for the District of Columbia* by STATE OF ALABAMA filed by STATE OF ALABAMA.(Neiman, John) (Entered: 05/27/2015) |
| 05/27/2015 | 10 | REQUEST FOR SUMMONS TO ISSUE *as to Attorney General of the United States* by STATE OF ALABAMA filed by STATE OF ALABAMA.(Neiman, John) (Entered: 05/27/2015) |
| 05/28/2015 | 11 | SUMMONS (2) Issued Electronically as to U.S. Attorney and U.S. Attorney General (Attachments: # 1 Summons for USAG)(jf) (Entered: 05/28/2015) |
| 06/05/2015 | 12 | MOTION to Intervene by WATER WORKS & SANITARY SEWER BOARD OF THE CITY OF MONTGOMERY, ALABAMA (Attachments: # 1 Exhibit 1 – Proposed Complaint in Intervention)(Sefton, Patrick) (Entered: 06/05/2015) |
| 06/05/2015 | 13 | MEMORANDUM re 12 MOTION to Intervene filed by WATER WORKS & SANITARY SEWER BOARD OF THE CITY OF MONTGOMERY, ALABAMA by WATER WORKS & SANITARY SEWER BOARD OF THE CITY OF MONTGOMERY, ALABAMA. (Attachments: # 1 Exhibit A – Affidavit of Thomas R. Morgan)(Sefton, Patrick) (Entered: 06/05/2015) |
| 06/05/2015 | 14 | |

| | | |
|---|---|---|
| | | NOTICE of Proposed Order by WATER WORKS & SANITARY SEWER BOARD OF THE CITY OF MONTGOMERY, ALABAMA re 12 MOTION to Intervene , 13 Memorandum, (Sefton, Patrick) (Entered: 06/05/2015) |
| 06/09/2015 | 15 | MOTION to Intervene by THE BOARD OF WATER AND SEWER COMMISSIONERS OF THE CITY OF MOBILE (Attachments: # 1 Exhibit 1– Proposed Complaint in Intervention, # 2 Memorandum in Support, # 3 Affidavit Exhibit A –Affidavit of Charles E Hyland Jr.)(Taylor, Frank) (Entered: 06/09/2015) |
| 06/09/2015 | 16 | NOTICE of Proposed Order re 15 MOTION to Intervene by THE BOARD OF WATER AND SEWER COMMISSIONERS OF THE CITY OF MOBILE (Taylor, Frank) (Entered: 06/09/2015) |
| 06/09/2015 | 17 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 6/4/15. (Neiman, John) (Entered: 06/09/2015) |
| 06/09/2015 | 18 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 6/2/2015. Answer due for ALL FEDERAL DEFENDANTS by 8/1/2015. (Neiman, John) (Entered: 06/09/2015) |
| 06/16/2015 | 19 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. THOMAS P. BOSTICK served on 6/3/2015; JOHN J CHYTKA served on 6/1/2015; JO–ELLEN DARCY served on 6/3/2015; JOHN M. MCHUGH served on 6/3/2015; C. DAVID TURNER served on 6/1/2015; U.S. ARMY CORPS OF ENGINEERS served on 6/3/2015 (Neiman, John) (Entered: 06/16/2015) |
| 06/17/2015 | 20 | NOTICE of Appearance by Derrick Wayne Grace on behalf of All Defendants (Grace, Derrick) (Entered: 06/17/2015) |
| 06/29/2015 | 21 | ENTERED IN ERROR.....NOTICE of Appearance by Maureen Elizabeth Rudolph on behalf of THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS (Rudolph, Maureen) Modified on 6/30/2015 (jf). (Entered: 06/29/2015) |
| 06/30/2015 | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re 21 Notice of Appearance was entered in error and counsel was instructed to refile said pleading using their assigned login/password. (Counsel should review LCvR 5.4) (jf) (Entered: 06/30/2015) |
| 06/30/2015 | 22 | NOTICE of Appearance by Ruth Ann Storey on behalf of THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS (Storey, Ruth) (Entered: 06/30/2015) |
| 07/10/2015 | 23 | LEAVE TO FILE DENIED– Letter addressed to Clerk of Court. This document is unavailable as the Court denied its filing.. "Leave to file is denied" Signed by Judge Emmet G. Sullivan on 07/08/2015. (jf) (Entered: 07/10/2015) |
| 07/16/2015 | 24 | MOTION to Change Venue by THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS (Attachments: # 1 Memorandum in Support of Motion, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C)(Storey, Ruth) (Entered: 07/16/2015) |
| 07/16/2015 | 25 | |

| | | |
|---|---|---|
| | | MOTION for Extension of Time to File Answer re 1 Complaint, by THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS (Storey, Ruth) (Entered: 07/16/2015) |
| 07/21/2015 | | MINUTE ORDER. Pending before the Court are 12 and 15 motions to intervene filed by the Water Works and Sanitary Sewer Board of the City of Montgomery, Alabama and the Board of Water and Sewer Commissioners of the City of Mobile. The plaintiff consents to both motions, but the motions to intervene were filed before the defendants had been served, so it is not clear what position the defendants take on those motions. Also pending are 24 the defendants' motion to transfer venue and 25 the defendants' motion to extend the deadline for responding to the Complaint pending resolution of 24 the motion to transfer venue. Both of those motions are opposed by the plaintiff and the deadlines for the plaintiff's responses have not yet arrived. The Court enters this Order to streamline the preliminary proceedings in this case. It is hereby ORDERED that the parties, including the putative intervenors, shall file a joint status report by no later than July 23, 2015 indicating whether the defendants oppose one or both of the motions to intervene and, if so, setting forth the parties respective positions regarding whether the Court should resolve the motions to intervene along with the motion to transfer, or could first decide whether transfer is warranted before adjudicating the requests for intervention. It is FURTHER ORDERED that the plaintiff shall file its opposition to 25 the defendants' motion for extension of time by no later than July 23, 2015. Signed by Judge Emmet G. Sullivan on July 21, 2015. (lcegs2) (Entered: 07/21/2015) |
| 07/22/2015 | | Set/Reset Deadlines: Joint Status Report due by 7/23/2015. Plaintiff Opposition due by 7/23/2015. (mac) (Entered: 07/22/2015) |
| 07/23/2015 | 26 | STATUS REPORT *JOINT STATUS REPORT* by WATER WORKS & SANITARY SEWER BOARD OF THE CITY OF MONTGOMERY, ALABAMA. (Sasser, Robert) (Entered: 07/23/2015) |
| 07/23/2015 | 27 | RESPONSE re 25 MOTION for Extension of Time to File Answer re 1 Complaint, filed by STATE OF ALABAMA. (Attachments: # 1 Text of Proposed Order)(Neiman, John) (Entered: 07/23/2015) |
| 08/03/2015 | 28 | REPLY to opposition to motion re 25 MOTION for Extension of Time to File Answer re 1 Complaint, filed by THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS. (Storey, Ruth) (Entered: 08/03/2015) |
| 08/03/2015 | 29 | Memorandum in opposition to re 24 MOTION to Change Venue filed by STATE OF ALABAMA. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Text of Proposed Order)(Neiman, John) (Entered: 08/03/2015) |
| 08/10/2015 | 30 | Unopposed MOTION for Extension of Time to File Response/Reply as to 24 MOTION to Change Venue by THOMAS P. BOSTICK, JOHN J CHYTKA, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS (Storey, Ruth) (Entered: 08/10/2015) |
| 08/10/2015 | | |

| | | |
|---|---|---|
| | | MINUTE ORDER granting <u>30</u> defendant's unopposed motion for extension of time. Defendants shall file their Reply to Plaintiffs' Opposition to Motion to Change Venue by no later than August 20, 2015. Signed by Judge Emmet G. Sullivan on 8/10/15. (lcegs3, ) (Entered: 08/10/2015) |
| 08/12/2015 | | Set/Reset Deadlines: Defendants shall file their Reply to Plaintiffs' Response to Motion to Change Venue by no later than August 20, 2015. (tcr) (Entered: 08/12/2015) |
| 08/20/2015 | <u>31</u> | REPLY to opposition to motion re <u>24</u> MOTION to Change Venue filed by THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS. (Rudolph, Maureen) (Entered: 08/20/2015) |
| 10/14/2015 | <u>32</u> | NOTICE OF WITHDRAWAL OF APPEARANCE as to THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS. Attorney Maureen Elizabeth Rudolph terminated. (Rudolph, Maureen) (Entered: 10/14/2015) |
| 10/14/2015 | <u>33</u> | NOTICE of Appearance by Douglas Michael Bushey on behalf of All Defendants (Bushey, Douglas) (Entered: 10/14/2015) |
| 03/24/2016 | | MINUTE ORDER denying <u>25</u> defendants' motion for an enlargement of time. The defendants shall file their answer to the complaint by no later than April 15, 2016. An order governing further proceedings will be entered as necessary following the Court's ruling on <u>24</u> federal defendants' motion to transfer venue. Signed by Judge Emmet G. Sullivan on March 24, 2016. (lcegs3) (Entered: 03/24/2016) |
| 03/24/2016 | | MINUTE ORDER. The Court, sua sponte, schedules a hearing on <u>24</u> federal defendants' motion to transfer venue on May 10, 2016 at 2:00 p.m. in Courtroom 24A. At that time, the Court will also hear oral argument on the federal defendants' motion to transfer venue in Alabama Power Company v. U.S. Army Corps of Engineers et al., Civil Action No. 15–699. With the exception of the filing of the federal defendants' answer to the complaint, all proceedings before the Honorable Emmet G. Sullivan are hereby STAYED pending the resolution of federal defendants' motion to transfer venue. Signed by Judge Emmet G. Sullivan on March 24, 2016. (lcegs3) (Entered: 03/24/2016) |
| 03/24/2016 | | Set/Reset Deadlines: Answer due by 4/15/2016. (mac) (Entered: 03/24/2016) |
| 03/24/2016 | | Case Stayed (mac) (Entered: 03/24/2016) |
| 03/25/2016 | | Set/Reset Hearings: Motion Hearing set for 5/10/2016 at 2:00 PM in Courtroom 24A before Judge Emmet G. Sullivan. (mac) (Entered: 03/25/2016) |
| 04/04/2016 | | MINUTE ORDER granting <u>12</u> unopposed motion to intervene as plaintiff by The Water Works and Sanitary Sewer Board of the City of Montgomery, Alabama ("Montgomery Board"). Intervention as of right is governed by Rule 24(a) of the Federal Rules of Civil Procedure. In the D.C. Circuit, an applicant must meet four criteria to be granted intervention as of right: (1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicants interests. Karsner v. Lothian, 532 F.3d 876, 885 (D.C. Cir. 2008) (citation omitted). Further, the D.C. Circuit requires the intervenor–applicant to demonstrate standing under Article III of the U.S. |

Constitution. See In re Endangered Species Act Section 4 Deadline Litigation, 704 F.3d 972, 976 (D.C. Cir. 2013). To demonstrate standing, the intervenor−applicant must show (1) an injury−in−fact that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) redressability. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). The Montgomery Board meets the criteria to be granted intervention as of right as follows: (1) the Montgomery Boards motion to intervene was timely as it was filed approximately one month after the complaint in this action, before any defendant had filed a responsive pleading, and while the case was in its preliminary stage; (2) the Montgomery Board has a legally protected interest in the subject matter of this lawsuit as it is a downstream user of the water resources at issue, and the Courts decision on the merits may directly impact the quantity and quality of the water that the Montgomery Board has available to operate its water and wastewater system; (3) a final decision in this matter could effectively foreclose the Montgomery Board from taking further action to protect that interest either due to the nature of the remedy ordered by the Court or through the precedential effect of the Court's decision; and (4) the State of Alabama may not adequately represent the interests of the Montgomery Board in this action because, while their interests are substantially aligned, the State of Alabama must necessarily represent the broader interests of the state as a whole, while the Montgomery Boards interests are specific and limited to providing safe, reasonably priced water and sewer service to its customers in the Montgomery area. Further, the Montgomery Board has Article III standing: (1) the Montgomery Board alleges an imminent injury in the form of decreased water flows, which the Montgomery Board alleges will threaten water quality and increase the costs of oversight; (2) that injury is fairly traceable to the defendants adoption of the challenged water manuals; and (3) a favorable decision by this Court holding unlawful and setting aside the challenged water manuals would redress the Montgomery Board's injuries. Accordingly, it is hereby ORDERED that the Montgomery Board's motion to intervene as plaintiff is GRANTED. The Clerk of the Court is directed to file the Montgomery Board's complaint which was lodged as an attachment to the Montgomery Board's motion to intervene. Signed by Judge Emmet G. Sullivan on April 4, 2016. (lcegs3) (Entered: 04/04/2016)

| | | |
|---|---|---|
| 04/04/2016 | | MINUTE ORDER granting <u>15</u> unopposed motion to intervene as plaintiff by The Board of Water and Sewer Commissioners of the City of Mobile ("Mobile Board"). Intervention as of right is governed by Rule 24(a) of the Federal Rules of Civil Procedure. In the D.C. Circuit, an applicant must meet four criteria to be granted intervention as of right: (1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicants interests. Karsner v. Lothian, 532 F.3d 876, 885 (D.C. Cir. 2008) (citation omitted). Further, the D.C. Circuit requires the intervenor−applicant to demonstrate standing under Article III of the U.S. Constitution. See In re Endangered Species Act Section 4 Deadline Litigation, 704 F.3d 972, 976 (D.C. Cir. 2013). To demonstrate standing, the intervenor−applicant must show (1) an injury−in−fact that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) redressability. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). The Mobile Board meets the criteria to be granted intervention as of right as follows: (1) the Mobile Board's motion to intervene was timely as it was filed approximately one month after the complaint in this action, before any defendant had filed a responsive pleading, and while the case was in its preliminary stage; (2) the |

| | | |
|---|---|---|
| | | Mobile Board has a legally protected interest in the subject matter of this lawsuit as it is a downstream user of the water resources at issue, and the Court's decision on the merits may directly impact the quantity and quality of the water that the Mobile Board has available to operate its industrial water supply; (3) a final decision in this matter could effectively foreclose the Mobile Board from taking further action to protect that interest either due to the nature of the remedy ordered by the Court or through the precedential effect of the Court's decision; and (4) the State of Alabama may not adequately represent the interests of the Mobile Board in this action because, while their interests are substantially aligned, the State of Alabama must necessarily represent the broader interest of the state as a whole, while the Mobile Board's interests are specific and primarily limited to providing fresh water to its industrial customers free of salt water intrusion from Mobile Bay. Further, the Mobile Board has Article III standing: (1) the Mobile Board alleges an actual injury in the form of decreased fresh water flows resulting in a salt water intrusion from Mobile Bay; (2) that injury is fairly traceable from the defendants' adoption of the challenged water manuals; and (3) a favorable decision of this Court holding unlawful and setting aside the challenged water manuals would redress the Mobile Board's injuries. Accordingly, it is hereby ORDERED that the Mobile Board's motion to intervene as plaintiff is GRANTED. The Clerk of the Court is directed to file the Mobile Board's complaint which was lodged as an attachment to the Mobile Board's motion to intervene. Signed by Judge Emmet G. Sullivan on April 4, 2016. (lcegs3) (Entered: 04/04/2016) |
| 04/04/2016 | 34 | Intervenor COMPLAINT filed by BOARD OF WATER AND SEWER COMMISSIONERS OF THE CITY OF MOBILE.(jf) (Entered: 04/04/2016) |
| 04/04/2016 | 35 | Intervenor COMPLAINT filed by WATER WORKS & SANITARY SEWER BOARD OF THE CITY OF MONTGOMERY, ALABAMA.(jf) (Entered: 04/04/2016) |
| 04/15/2016 | 36 | ANSWER to Complaint by THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS.(Storey, Ruth) (Entered: 04/15/2016) |
| 04/29/2016 | 37 | MOTION for Leave to File *SUBMIT RESPONSE TO DEFENDANTS' MOTION TO TRANSFER VENUE* by WATER WORKS & SANITARY SEWER BOARD OF THE CITY OF MONTGOMERY, ALABAMA (Attachments: # 1 Exhibit Response in Opposition to Federal Defendants' Motion to Transfer Venue)(Sefton, Patrick) (Entered: 04/29/2016) |
| 04/29/2016 | 38 | MOTION for Leave to File *Submit Response to Defs' Motion to Transfer Venue* by BOARD OF WATER AND SEWER COMMISSIONERS OF THE CITY OF MOBILE (Attachments: # 1 Response in Opposition to Federal Defs' Motion to Transfer Venue)(Taylor, Frank) (Entered: 04/29/2016) |
| 05/02/2016 | | MINUTE ORDER granting 37 plaintiff–intervenor Water Works & Sanitary Sewer Board of the City of Montgomery, Alabama's motion for leave to file response to defendants' motion to transfer venue, and granting 38 plaintiff–intervenor Board of Water and Sewer Commissioners of the City of Mobile, Alabama's motion for leave to file response to defendant's motion to transfer venue. The plaintiff intervenor's responses to the defendants' motion to transfer venue are hereby deemed filed. Signed by Judge Emmet G. Sullivan on May 2, 2016. (lcegs3) (Entered: 05/02/2016) |
| 05/02/2016 | 39 | |

| | | |
|---|---|---|
| | | Memorandum in opposition to re <u>24</u> MOTION to Change Venue filed by WATER WORKS & SANITARY SEWER BOARD OF THE CITY OF MONTGOMERY, ALABAMA. (jf) (Entered: 05/02/2016) |
| 05/02/2016 | <u>40</u> | Memorandum in opposition to re <u>24</u> MOTION to Change Venue filed by BOARD OF WATER AND SEWER COMMISSIONERS OF THE CITY OF MOBILE. (jf) Modified on 5/13/2016 (zjf). (Entered: 05/13/2016) |
| 05/05/2016 | | MINUTE ORDER. Due to the Court's calendar, it is necessary to reschedule the motions hearing currently scheduled for May 17, 2016. The motions hearing will now take place on June 15, 2016 at 10:30 a.m. in Courtroom 24A. The Court regrets any inconvenience to the parties. Signed by Judge Emmet G. Sullivan on May 5, 2016. (lcegs3) (Entered: 05/05/2016) |
| 05/06/2016 | | Set/Reset Hearings: Motion Hearing set for 6/15/2016 at 10:30 AM in Courtroom 24A before Judge Emmet G. Sullivan. (mac) (Entered: 05/06/2016) |
| 06/09/2016 | | MINUTE ORDER. Due to the Court's calendar, it is necessary to reschedule the motions hearing currently scheduled for June 15, 2016. The motions hearing will now take place on July 8, 2016 at 11:00 a.m. in Courtroom 24A. The Court regrets any inconvenience to the parties. Signed by Judge Emmet G. Sullivan on 6/9/2016. (lcegs1) (Entered: 06/09/2016) |
| 06/09/2016 | | MINUTE ORDER. Due to the Court's calendar, it is necessary to reschedule the motions hearing currently scheduled for June 15, 2016. The motions hearing will now take place on July 8, 2016 at 11:00 a.m. in Courtroom 24A. The Court regrets any inconvenience to the parties. Signed by Judge Emmet G. Sullivan on 6/9/2016. (lcegs1) (Entered: 06/09/2016) |
| 06/10/2016 | | Set/Reset Hearings: Motion Hearing set for 7/8/2016 at 11:00 AM in Courtroom 24A before Judge Emmet G. Sullivan. (mac) (Entered: 06/10/2016) |
| 06/15/2016 | | MINUTE ORDER. Due to unforeseen circumstances, it is necessary to reschedule the motion hearing currently scheduled for July 8, 2016. The motion hearing will now take place on July 21, 2016 at 10:00 a.m. in Courtroom 24A. The Court regrets any inconvenience to the parties. Signed by Judge Emmet G. Sullivan on June 15, 2016. (lcegs3) (Entered: 06/15/2016) |
| 06/15/2016 | | Set/Reset Hearings: Motion Hearing set for 7/21/2016 at 10:00 AM in Courtroom 24A before Judge Emmet G. Sullivan. (mac) (Entered: 06/15/2016) |
| 07/05/2016 | <u>41</u> | NOTICE of Appearance by Laura Williamson Duncan on behalf of THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS (Duncan, Laura) (Entered: 07/05/2016) |
| 07/15/2016 | <u>42</u> | NOTICE of Appearance by John Aaron Earnhardt on behalf of STATE OF ALABAMA (Earnhardt, John) (Entered: 07/15/2016) |
| 07/21/2016 | | Minute Entry for proceedings held before Judge Emmet G. Sullivan: Motion Hearing held on 7/21/2016 re <u>24</u> MOTION to Change Venue filed by JO–ELLEN DARCY, U.S. ARMY CORPS OF ENGINEERS, JOHN J CHYTKA, C. DAVID TURNER, JOHN M. MCHUGH, THOMAS P. BOSTICK. The Court Will Take The Motion Under Advisement. (Court Reporter SCOTT WALLACE.) (mac) (Entered: 07/21/2016) |

| 07/22/2016 | | MINUTE ORDER denying 24 defendants' motion to change venue. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Determining whether transfer is appropriate is a two−part inquiry: first, the Court must determine whether the action "might have been brought" in the transferee forum, and second, the Court must determine whether transfer serves "the convenience of the parties and witnesses, in the interest of justice." See Lentz v. Eli Lilly, 464 F. Supp. 2d 35, 37 (D.D.C. 2006). In evaluating a motion to transfer, the Court must weigh a number of private and public interest factors. Id. The relevant private interest factors include, but are not limited to: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. Greater Yellowstone Coal., v. Bosworth, 180 F. Supp. 2d 124, 127 (D.D.C. 2001). Public interest considerations include: (1) the transferee court's familiarity with the governing law and the pendency of related actions in the transferee forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. Id. The plaintiffs choice of forum is ordinarily entitled to substantial deference, Nat'l Ass'n of Home Builders v. U.S. Envtl. Prot. Agency, 675 F. Supp. 2d 173, 179 (D.D.C. 2009), and the moving party bears the burden of establishing that convenience and the interests of justice weigh in favor of transfer. Trout Unlimited v. U.S. Dept of Agric., 944 F. Supp. 13, 17 (D.D.C. 1996). There is no dispute this case could have been brought in the Northern District of Georgia, hence, the Court's inquiry is confined to the second step of the two−part inquiry that is, whether the public and private interest factors weigh in favor of transfer. See Lentz, 464 F. Supp. 2d at 37. The defendants have failed to demonstrate that the private−interest factors weigh in favor of transfer. First, the plaintiffs choice of forum is entitled to substantial deference, and the defendants' desire to litigate this case in the Northern District of Georgia cannot, by itself, outweigh the deference owed to plaintiffs choice of forum. See Greater Yellowstone Coal., 180 F. Supp. 2d at 124. Further, an APA case is said to "arise" in the place where the challenged decisionmaking occurred, Nat'l Ass'n of Homebuilders, 675 F. Supp. 2d at 179, and here, plaintiff alleges that at least some of the challenged decisionmaking occurred in Washington, D.C. Pl's. Opp., ECF 29, at 37. Finally, the parties agree that because this case is an action for review of an administrative record, the convenience−based factors do not bear any weight in the Court's analysis. Defs.' Mot., ECF 24 at 13; Pl.'s Opp., at 20. The defendants have also failed to demonstrate that the public interest factors weigh in favor of transfer. Though the defendants argue that transfer to the Northern District of Georgia will avoid the "possibility of inconsistent results," Defs.' Mot. at 9, the Court need not transfer a case where, the risk of inconsistent results is "merely speculative." See Oceana v. Pritzker, 58 F. Supp. 3d 2, 8 (D.D.C. 2013). Here, defendants have not persuaded the Court that the risk of inconsistent results is more than mere speculation. Further, neither party raises any argument concerning the relative congestion of this Court as compared to the Northern District of Georgia. Finally, although the federal defendants argue that there is a "local interest" in deciding this case in a district court located within the ACT basin, Defs.' Mot. at 11, the Court finds that the issues in this case are not purely local because, among other things, they implicate the interests of more than one state. See Oceana, 58 F. Supp. 3d at 5 (denying motion to transfer to |

| | | |
|---|---|---|
| | | District of Massachusetts where regulations at issue affected producers and consumers from "Maine to North Carolina"); Oceana v. Bureau of Ocean Energy Mgmt., 962 F. Supp. 2d 70, 76–77 (D.D.C. 2013) (denying motion to transfer to Southern District of Alabama where dispute affected communities throughout the Gulf Coast region). Accordingly, the defendants have not met their burden of showing that convenience and the interests of justice weigh in favor of transfer. The defendants' motion to change venue is therefore DENIED. The federal defendants shall serve the administrative record and index on the parties by no later than August 5, 2016. The parties shall complete their review of the administrative record and provide correspondence to the federal defendants raising any concerns by no later than October 7, 2016. The parties shall attempt to resolve record disputes amongst themselves by no later than October 21, 2016. If the parties are unable to resolve any record disputes amongst themselves, the parties shall adhere to the following schedule for resolution of any disputes by the Court: Any motion to complete/compel/supplement shall be filed by no later than November 3, 2016; any response/opposition shall be filed by no later than November 17, 2016; and any reply shall be filed by no later than December 1, 2016. Two weeks after either an order resolving all administrative record disputes or the parties' resolution of any administrative record concerns themselves, whichever is later, federal defendants will file the certified list of the contents of the administrative record with the Court. The federal defendants shall provide a complete copy of the administrative record, with certified list, to the Court on flash drive(s) or CD(s). The Court will schedule further proceedings in this matter following the production of the administrative record. Signed by Judge Emmet G. Sullivan on July 22, 2016. (lcegs3) (Entered: 07/22/2016) |
| 07/22/2016 | | Set/Reset Deadlines: Administrative Record due by 8/5/2016. Motions To Complete/Compel/Supplement due by 11/3/2016. Response/Opposition due by 11/17/2016. Reply due by 12/1/2016. (mac) (Entered: 07/22/2016) |
| 07/22/2016 | 43 | NOTICE of Appearance by Andrew Lynn Brasher on behalf of STATE OF ALABAMA (Brasher, Andrew) (Entered: 07/22/2016) |
| 10/07/2016 | 44 | NOTICE of Appearance by Shelly Jacobs Ellerhorst on behalf of STATE OF GEORGIA (Ellerhorst, Shelly) (Entered: 10/07/2016) |
| 10/07/2016 | 45 | MOTION to Intervene by STATE OF GEORGIA (Attachments: # 1 Memorandum in Support, # 2 Exhibit Proposed Answer, # 3 Exhibit Proposed Answer, # 4 Exhibit Proposed Answer, # 5 Exhibit Proposed Answer, # 6 Text of Proposed Order)(Ellerhorst, Shelly) (Entered: 10/07/2016) |
| 10/07/2016 | 46 | NOTICE of Appearance by John Curtis Allen on behalf of STATE OF GEORGIA (Allen, John) (Entered: 10/07/2016) |
| 10/07/2016 | 47 | NOTICE of Appearance by Richard Allen Horder on behalf of STATE OF GEORGIA (Horder, Richard) (Entered: 10/07/2016) |
| 10/07/2016 | 48 | MOTION to Intervene by ATLANTA REGIONAL COMMISSION, Cobb County–Marietta Water Authority (Attachments: # 1 Memorandum in Support of Motion to Intervene, # 2 Exhibit A. Page Declaration, # 3 Exhibit B. Zitsch Declaration, # 4 Answer to the State of Alabama's Complaint, # 5 Answer to Alabama Power Company's Complaint, # 6 Answer to the City of Mobile's Complaint, # 7 Answer to the City of Montgomery's Complaint, # 8 Text of Proposed Order)(Iannetta, Christie) (Entered: 10/07/2016) |
| 10/07/2016 | 49 | |

| | | |
|---|---|---|
| | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– John L. Fortuna, :Firm– King & Spalding LLP, :Address– 1180 Peachtree Street, N.E., Atlanta, GA 30309–3521. Phone No. – (404) 572–2828. Fax No. – (404) 572–5100 Filing fee $ 100, receipt number 0090–4702579. Fee Status: Fee Paid. by ATLANTA REGIONAL COMMISSION, Cobb County–Marietta Water Authority (Attachments: # 1 Declaration of John L. Fortuna, # 2 Text of Proposed Order)(Iannetta, Christie) (Entered: 10/07/2016) |
| 10/07/2016 | 50 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Lewis B. Jones, :Firm– King & Spalding LLP, :Address– 1180 Peachtree Street, N.E., Atlanta, GA 30309–3521. Phone No. – (404) 572–2742. Fax No. – (404) 572–5100 Filing fee $ 100, receipt number 0090–4702588. Fee Status: Fee Paid. by ATLANTA REGIONAL COMMISSION, Cobb County–Marietta Water Authority (Attachments: # 1 Declaration of Lewis B. Jones, # 2 Text of Proposed Order)(Iannetta, Christie) (Entered: 10/07/2016) |
| 10/07/2016 | 51 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Stephen A. McCullers, :Firm– King & Spalding LLP, :Address– 1180 Peachtree Street, N.E., Atlanta, Georgia 30309–3521. Phone No. – (404) 572–3537. Fax No. – (404) 572–5100 Filing fee $ 100, receipt number 0090–4702595. Fee Status: Fee Paid. by ATLANTA REGIONAL COMMISSION, Cobb County–Marietta Water Authority (Attachments: # 1 Declaration of Stephen A. McCullers, # 2 Text of Proposed Order)(Iannetta, Christie) (Entered: 10/07/2016) |
| 10/11/2016 | | MINUTE ORDER granting 49 motion for leave to appear pro hac vice. John L. Fortuna is hereby admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on 10/11/2016. (lcegs1) (Entered: 10/11/2016) |
| 10/11/2016 | | MINUTE ORDER granting 50 motion for leave to appear pro hac vice. Lewis B. Jones is hereby admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on 10/11/2016. (lcegs1) (Entered: 10/11/2016) |
| 10/11/2016 | | MINUTE ORDER granting 51 motion for leave to appear pro hac vice. Stephen A. McCullers is hereby admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on 10/11/2016. (lcegs1) (Entered: 10/11/2016) |
| 10/19/2016 | 52 | NOTICE of Appearance by Sarah Hawkins Warren on behalf of STATE OF GEORGIA (Warren, Sarah) (Entered: 10/19/2016) |
| 10/19/2016 | 53 | NOTICE of Appearance by Britt Cagle Grant on behalf of STATE OF GEORGIA (Grant, Britt) (Entered: 10/19/2016) |
| 10/24/2016 | 54 | Memorandum in opposition to re 45 MOTION to Intervene , 48 MOTION to Intervene filed by ALABAMA POWER COMPANY. (Attachments: # 1 Exhibit A, # 2 Appendix, # 3 Text of Proposed Order)(Byram, James) Modified event title on 10/25/2016 (znmw). (Entered: 10/24/2016) |
| 10/24/2016 | 55 | Memorandum in opposition to re 45 MOTION to Intervene , 48 MOTION to Intervene *JOINT MEMORANDUM)* filed by WATER WORKS & SANITARY SEWER BOARD OF THE CITY OF MONTGOMERY, ALABAMA. (Attachments: # 1 Exhibit A ARC, Cobb County–Marietta Counsel's State of Georgia Joinder Letter, # 2 Text of Proposed Order)(Sefton, Patrick) (Entered: 10/24/2016) |
| 10/24/2016 | 56 | Memorandum in opposition to re 45 MOTION to Intervene , 48 MOTION to Intervene filed by STATE OF ALABAMA. (Attachments: # 1 Exhibit 1 –– Georgia |

| | | |
|---|---|---|
| | | entities letter, # 2 Exhibit 2 –– JPML corrected reply, # 3 Text of Proposed Order)(Neiman, John) Modified event title on 10/25/2016 (znmw). (Entered: 10/24/2016) |
| 11/03/2016 | 57 | NOTICE OF SUBSTITUTION OF COUNSEL by Eileen T. McDonough on behalf of THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS Substituting for attorney Douglas M. Bushey (McDonough, Eileen) (Entered: 11/03/2016) |
| 11/03/2016 | 58 | REPLY to opposition to motion re 45 MOTION to Intervene filed by STATE OF GEORGIA. (Ellerhorst, Shelly) (Entered: 11/03/2016) |
| 11/03/2016 | 59 | REPLY to opposition to motion re 48 MOTION to Intervene filed by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY. (Fortuna, John) (Entered: 11/03/2016) |
| 11/17/2016 | 60 | NOTICE of Appearance by William E. Gerard on behalf of All Defendants (Gerard, William) (Entered: 11/17/2016) |
| 11/18/2016 | 61 | ADMINISTRATIVE RECORD – *Notice of Certified List of Contents* by THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS. (Attachments: # 1 Certification, # 2 Certified list of contents of Administrative Record)(Duncan, Laura) (Entered: 11/18/2016) |
| 11/18/2016 | 62 | NOTICE OF WITHDRAWAL OF APPEARANCE as to THOMAS P. BOSTICK. Attorney Derrick Wayne Grace terminated. (Grace, Derrick) (Entered: 11/18/2016) |
| 11/21/2016 | 63 | Joint MOTION to Intervene by Lake Martin Resource Association, Inc., Russell Lands, Inc. (Attachments: # 1 Exhibit Memorandum in Support, # 2 Exhibit Complaint in Intervention, # 3 Exhibit Affidavit of John Thompson, # 4 Exhibit Affidavit of Tom Lamberth, # 5 Text of Proposed Order)(Sharman, Jackson) (Entered: 11/21/2016) |
| 12/05/2016 | | MINUTE ORDER. In view of 61 Administrative Record – Notice of Certified List of Contents, the parties shall file a joint proposal for further proceedings in this case by no later than December 16, 2016. Signed by Judge Emmet G. Sullivan on 12/5/2016. (lcegs1) (Entered: 12/05/2016) |
| 12/05/2016 | | Set/Reset Deadlines: Joint Proposal For Further Proceedings due by 12/16/2016. (mac) (Entered: 12/05/2016) |
| 12/08/2016 | 64 | Joint MOTION for Scheduling Order by STATE OF ALABAMA (Attachments: # 1 Text of Proposed Order)(Neiman, John) (Entered: 12/08/2016) |
| 12/20/2016 | 65 | NOTICE OF WITHDRAWAL OF APPEARANCE as to STATE OF GEORGIA. Attorney Britt Cagle Grant terminated. (Grant, Britt) (Entered: 12/20/2016) |
| 02/27/2017 | 66 | NOTICE OF WITHDRAWAL OF APPEARANCE as to THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS. Attorney Ruth Ann Storey terminated. (Gerard, William) (Entered: 02/27/2017) |
| 03/31/2017 | | MINUTE ORDER granting 45 motion to intervene as defendant by the State of Georgia. Georgia seeks to intervene: (1) to protect the U.S. Army Corps of Engineers |

(Corps) authority to respond to Georgias water supply requests currently pending before it; and (2) to protect its sovereign interests in regulating and managing its water to promote the health and safety of Georgias citizens and the continued success of the State. Mem. of Law in Support of State of Georgias Mot. to Intervene, ECF No. 45–1 at 4. Georgia has asked the Corps to allocate additional storage in Allatoona Lake so that Georgia can use additional water from Allatoona Lake for municipal and industrial purposes. The Corps has not yet responded to that request. The Court notes there is a finite amount of storage in Allatoona Lake and thus if more water is released from storage for the benefit of Alabama, that necessarily means that there will be less storage available in the lake.Intervention as of right is governed by Rule 24(a) of the Federal Rules of Civil Procedure. In the D.C. Circuit, an applicant must meet four criteria to be granted intervention as of right: (1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests. Karsner v. Lothian, 532 F.3d 876, 885 (D.C.Cir. 2008)(citation omitted). Further, the D.C. Circuit requires the intervenor–applicant to demonstrate standing under Article III of the U.S. Constitution. See In re Endangered Species Act Section 4 Deadline Litigation, 704 F.3d 972, 976 (D.C.Cir. 2013). To demonstrate standing, the intervenor–applicant must show (1) an injury–in–fact that is (a) concrete and particularized and (b) actual and imminent, (2) causal connection between the injury and the conduct that is being complained about, and (3) redressability. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). In the context of a challenge to agency action, [f]or standing purposes, it is enough that a plaintiff seeks relief, which, if granted, would injure the prospective intervenor. Crossroads Grassroots Policy Strategies v. Fed. Election Comms, 788 F.3d 312, 318 (D.C. Cir. 2015).Georgia meets the criteria to be granted intervention as of right as follows: (1) the motion to intervene was timely given that the scheduling order for the merits briefing has not been issued; (2) Georgia has a legally protected interest in the subject matter of this lawsuit –– the validity of the Master Manuals governing the operation of Allatoona Lake including the amount of storage in the lake –– because of Georgias water supply requests currently pending before the Corps; (3) given that there is a finite amount of water in the lake, a final decision in this matter could adversely affect the Corps authority to respond to Georgias pending water supply requests; and (4) the federal defendants do not adequately represent the interests of Georgia because the Corps is responsible for managing the entire ACT basin whereas Georgia has specific interests in current and future water supply needs at Lake Allatoona. Further, the Georgia has demonstrated Article III standing: Georgia alleges an injury–in–fact because it has pending water storage requests before the Corps, and these requests could be adversely affected by the outcome of this litigation. Accordingly, it is hereby ORDERED that the intervenor–applicants' motion to intervene as defendant is GRANTED. The Clerk of the Court is directed to file the intervenor–applicants answer which was lodged as an attachment to the intervenor–applicants motion to intervene. As stipulated, Georgia, will not raise objections to venue in this Court nor seek to relitigate the motion to transfer. Further, it will litigate the case based on the Administrative Record that has been lodged with this Court. Signed by Judge Emmet G. Sullivan on 3/31/2017. (lcegs1) (Entered: 03/31/2017)

| 03/31/2017 | | MINUTE ORDER granting 48 motion to intervene as defendants by the Atlanta Regional Commission (ARC) and the Cobb County–Marietta Water Authority (CC–MWA) (collectively the Water Suppliers) over the objections of plaintiffs. ARC is the Metropolitan Area Planning and Development Commission for the |

metropolitan Atlanta region, and is empowered by the Georgia General Assembly to coordinate and manage the planning development, implementation, construction management and operation of regional public projects (including water supply projects), and to act as the contracting and coordinating agent for participating affected local governments. Zitsch Decl., ECF No. 48–3 at 2. CC–MWA is a regional wholesale water provider established by the Georgia General Assembly and has a storage contract with the U.S. Army Corps of Engineers (Corps) to utilize a certain quantity of storage in Allatoona Lake to store water for municipal and industrial purposes. Page Decl., ECF No. 48–2 at 2–3. CC–MWA has been trying to secure additional water supply storage in Allatoona Lake since 1981, but the Corps has not acted on CC–MWAs requests. Id. at 3. The Water Suppliers and the State of Georgia have sued the Corps in the Northern District of Georgia seeking to compel the Corps to make a decision on the 1981 request for additional water storage. Id.; Zitsch Decl., ECF No. 48–3 at 3–4. The plaintiffs challenge the Water Control Manuals because, among other things, they reduce the quantity of water flowing to Alabama. Compl., ECF No. 1 at 9. The Court notes there is a finite amount of storage in Allatoona Lake and thus if more water is released from storage for the benefit of Alabama, that necessarily means that there will be less storage available in the lake. Intervention as of right is governed by Rule 24(a) of the Federal Rules of Civil Procedure. In the D.C. Circuit, an applicant must meet four criteria to be granted intervention as of right: (1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests. Karsner v. Lothian, 532 F.3d 876, 885 (D.C.Cir. 2008)(citation omitted). Further, the D.C. Circuit requires the intervenor–applicant to demonstrate standing under Article III of the U.S. Constitution. See In re Endangered Species Act Section 4 Deadline Litigation, 704 F.3d 972, 976 (D.C.Cir. 2013). To demonstrate standing, the intervenor–applicant must show (1) an injury–in–fact that is (a) concrete and particularized and (b) actual and imminent, (2) causal connection between the injury and the conduct that is being complained about, and (3) redressability. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). In the context of a challenge to agency action, [f]or standing purposes, it is enough that a plaintiff seeks relief, which, if granted, would injure the prospective intervenor. Crossroads Grassroots Policy Strategies v. Fed. Election Comms, 788 F.3d 312, 318 (D.C. Cir. 2015). The Water Suppliers meet the criteria to be granted intervention as of right as follows: (1) the motion to intervene was timely given that the scheduling order for the merits briefing has not been issued; (2) the Water Suppliers have a legally protected interest in the subject matter of this lawsuit –– the validity of the Master Manuals governing the operation of Allatoona Lake including the amount of storage in the lake because: (a) CC–MWA has a storage contract with the U.S. Army Corps of Engineers to utilize a certain quantity of storage in Allatoona Lake to store water for municipal and industrial purposes; and (b) ARC is responsible for ensuring an adequate water supply for the metropolitan Atlanta region; (3) a final decision in this matter could: (a) interfere with CC–MWAs use of its existing storage and adversely affect CC–MWAs ability to purchase additional storage in the future; and (b) interfere with ARCs responsibility to ensure adequate water supply for the metropolitan Atlanta region; and (4) the federal defendants do not adequately represent the interests of the Water–Suppliers because the Corps is responsible for managing the entire ACT basin whereas the Water Suppliers have specific interests in current and future water supply needs at Lake Allatoona. The State of Georgia does not adequately represent the interests of the Water–Suppliers because Georgias interests are broader and include the interests of

all water uses in the state. Further, the Water Suppliers have demonstrated Article III standing: CC–MWA alleges an injury–in–fact because it has a legally protected interest in storing water in Allatoona Lake and it has outstanding water storage requests, both of which could be adversely affected by the outcome of this litigation. ARCs responsibility for ensuring an adequate water supply for the metropolitan Atlanta region could also be adversely affected by the outcome of this litigation. The Court agrees with the Water Suppliers that although they have challenged the Corps failure to act on the outstanding water supply issues and other aspects of the Master Manuals and the FEIS, they nonetheless have a direct interest in defending the [Corps] action in this case. Accordingly, it is hereby ORDERED that the intervenor–applicants' motion to intervene as defendant is GRANTED. The Clerk of the Court is directed to file the intervenor–applicants' answer which was lodged as an attachment to the intervenor–applicants' motion to intervene. As stipulated, the Water Suppliers, will not raise objections to venue in this Court nor seek to relitigate the motion to transfer. Further, they will litigate the case on the Administrative Record that has been lodged with this Court. Signed by Judge Emmet G. Sullivan on 3/31/2017. (lcegs1) (Entered: 03/31/2017)

| 03/31/2017 | MINUTE ORDER granting 63 unopposed joint motion to intervene as plaintiffs by Lake Martin Resource Association and Russell Lands, Inc. (collectively "intervenor–applicants"). Intervention as of right is governed by Rule 24(a) of the Federal Rules of Civil Procedure. In the D.C. Circuit, an applicant must meet four criteria to be granted intervention as of right: (1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests. Karsner v. Lothian, 532 F.3d 876, 885 (D.C.Cir. 2008)(citation omitted). Further, the D.C. Circuit requires the intervenor–applicant to demonstrate standing under Article III of the U.S. Constitution. See In re Endangered Species Act Section 4 Deadline Litigation, 704 F.3d 972, 976 (D.C.Cir. 2013). To demonstrate standing, the intervenor–applicant must show (1) an injury–in–fact that is (a) concrete and particularized and (b) actual and imminent, (2) causal connection between the injury and the conduct that is being complained about, and (3) redressability. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). The intervenor–applicants meet the criteria to be granted intervention as of right as follows: (1) the joint motion to intervene was timely given that the scheduling order for the merits briefing has not been issued; (2) the intervenor–applicants have a legally protected interest in the subject matter of this lawsuit because they possess substantial interests on and around Lake Martin, and reductions in the quantity of water in Lake Martin as a result of the Water Control Manual that plaintiffs challenge directly impacts those interests; (3) a final decision in this matter could impair or impede the intervenor–applicants' ability to protect their interests; and (4) the State of Alabama and Alabama Power Company have similar interests, but their interests are not identical and therefore they do not adequately represent the interests of the intervenor–applicants. Further, the intervenor–applicants have demonstrated that they have Article III standing: (1) the intervenor–applicants allege an injury–in–fact because they allege that the Water Control Manual threatens, and has already caused a substantial reduction in the Alabama–Coosa–Tallapoosa basin, which impacts Lake Martin's water levels; (2) that injury is fairly traceable to the defendants adoption of the challenged water manuals; and (3) a favorable decision by this Court invalidating the challenged water manuals would redress the intervenor–applicants' injuries. Accordingly, it is hereby ORDERED that the intervenor–applicants' motion to intervene as plaintiff is |
|---|---|

| | | |
|---|---|---|
| | | GRANTED. The Clerk of the Court is directed to file the intervenor–applicants' complaint which was lodged as an attachment to the intervenor–applicants' motion to intervene. Signed by Judge Emmet G. Sullivan on 3/31/2017. (lcegs1) (Entered: 03/31/2017) |
| 03/31/2017 | | MINUTE ORDER granting 64 joint motion for entry of scheduling order. Plaintiffs shall file a joint motion for summary judgment by no later than May 30, 2017 (50 pages). Intervenor–plaintiffs shall file a joint motion for summary judgment by no later than June 13, 2017 (25 pages). The defendants combined cross–motion for summary judgment and opposition to plaintiffs motion for summary judgment shall by filed by no later than August 14, 2017 (50 pages). Intervenor–defendants joint opposition to plaintiffs motion for summary judgment shall be filed by no later than August 28, 2017 (25 pages). Plaintiffs joint opposition to defendants cross–motion for summary judgment and reply in support of plaintiffs motion for summary judgment shall be filed by no later than October 12, 2017 (30 pages). Intervenor–plaintiffs shall file their joint combined opposition and reply by no later than November 27, 2017 (15 pages). Defendants reply in support of cross–motion for summary judgment shall be filed by no later than November 27, 2017 (30 pages). It is FURTHER ORDERED that the parties may file non–hyperlinked briefs in accordance with this schedule. By no later than December 11, 2017, the parties shall file E–Briefs containing hyperlinks to cited portions of the administrative record and points and authorities. The Court observes that E–Briefs adequately fulfill the purpose of Local Rule 7(n), which is to highlight for the Court the most relevant portions of a voluminous administrative record. In addition to electronic filing, the parties shall submit to the Court two hard copies and one USB drive containing all pleadings. All submissions to the Court shall be single–sided, double–spaced, and use 12–point Times New Roman font and one inch page margins. Each set of hard copies shall be in three–ring binders, with appropriate tables of contents and tabs, and the binders shall be clearly labeled to identify the pleadings therein. It is FURTHER ORDERED that by no later than December 11, 2017, the parties shall jointly submit one copy of each principal case or authority cited by any party. The points and authorities shall be in three–ring binders, with appropriate tables of contents and tabs, and the binders shall be clearly labeled to identify the contents therein. All pleadings submitted to the Court pursuant to this paragraph shall be printed or e–copied from the docketed pleading containing the ECF header. Signed by Judge Emmet G. Sullivan on 3/31/2017. (lcegs1) (Entered: 03/31/2017) |
| 03/31/2017 | 67 | ANSWER to 1 Complaint by STATE OF GEORGIA.(jf) (Entered: 03/31/2017) |
| 03/31/2017 | 68 | ANSWER to 34 Intervenor Complaint by STATE OF GEORGIA.(jf) (Entered: 03/31/2017) |
| 03/31/2017 | 69 | ANSWER to 35 Intervenor Complaint by STATE OF GEORGIA.(jf) (Entered: 03/31/2017) |
| 03/31/2017 | | Set/Reset Deadlines: Plaintiffs Joint Motion For Summary Judgment due by 5/30/2017. Intervenor–Plaintiffs Joint Motion For Summary Judgment due by 6/13/2017. Defendants Combined Cross–Motion For Summary Judgment and Opposition To Plaintiffs Motion For Summary Judgment due by 8/14/2017. Intervenor–Defendants Joint Opposition To Plaintiffs Motion For Summary Judgment due by 8/28/2017. Plaintiffs Joint Opposition To Defendants Cross–Motion For Summary Judgment and Reply In Support Of Plaintiffs Motion For Summary Judgment due by 10/12/2017. Intervenor–Plaintiffs Joint Combined |

| | | |
|---|---|---|
| | | Opposition and Reply due by 11/27/2017. Defendants Reply In Support Of Cross–Motion For Summary Judgment due by 11/27/2017. Parties E–Briefs due by 12/11/2017. (mac) (Entered: 03/31/2017) |
| 03/31/2017 | 70 | ANSWER to Complaint (filed in 15cv699 by ALABAMA POWER COMPANY) by STATE OF GEORGIA.(jf) (Entered: 03/31/2017) |
| 03/31/2017 | 71 | ANSWER to 1 Complaint by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY.(jf) (Entered: 03/31/2017) |
| 03/31/2017 | 72 | ANSWER to Complaint (filed in 15cv699 by ALABAMA POWER COMPANY) by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY.(jf) (Entered: 03/31/2017) |
| 03/31/2017 | 73 | ANSWER to 34 Intervenor Complaint by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY.(jf) (Entered: 03/31/2017) |
| 03/31/2017 | 74 | ANSWER to 35 Intervenor Complaint by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY.(jf) (Entered: 03/31/2017) |
| 03/31/2017 | 75 | Intervenor COMPLAINT filed by RUSSELL LANDS, INC., LAKE MARTIN RESOURCE ASSOCIATION, INC.(jf) (Entered: 03/31/2017) |
| 04/21/2017 | 76 | NOTICE of Appearance by Christopher M. Carr on behalf of STATE OF GEORGIA (Carr, Christopher) (Entered: 04/21/2017) |
| 04/21/2017 | 77 | ANSWER to 75 Intervenor Complaint by STATE OF GEORGIA.(Allen, John) (Entered: 04/21/2017) |
| 04/21/2017 | 78 | ANSWER to 75 Intervenor Complaint by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY. (Attachments: # 1 Certificate of Service)(Fortuna, John) (Entered: 04/21/2017) |
| 05/03/2017 | 79 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– William S. Cox III, :Firm– Lightfoot, Franklin & White LLC, :Address– 400 20th Street North Birmingham, AL 35203. Phone No. – 2055810700. Filing fee $ 100, receipt number 0090–4938002. Fee Status: Fee Paid. by LAKE MARTIN RESOURCE ASSOCIATION, INC., RUSSELL LANDS, INC. (Attachments: # 1 Declaration Declaration of William S Cox III, # 2 Text of Proposed Order Proposed Order)(Sharman, Jackson) (Entered: 05/03/2017) |
| 05/03/2017 | 80 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– W. Larkin Radney IV, :Firm– Lightfoot, Franklin & White LLC, :Address– 400 20th Street North Birmingham, AL 35203. Phone No. – 2055810700. Filing fee $ 100, receipt number 0090–4938072. Fee Status: Fee Paid. by LAKE MARTIN RESOURCE ASSOCIATION, INC., RUSSELL LANDS, INC. (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Sharman, Jackson) (Entered: 05/03/2017) |
| 05/05/2017 | 81 | MOTION for Leave to File *Brief of Amici Curiae* by Alabama Municipal Electric Authority (Attachments: # 1 Text of Proposed Order)(Skinner, Jeffrey) (Entered: 05/05/2017) |
| 05/09/2017 | | MINUTE ORDER granting 79 motion for admission pro hac vice. William S. Cox III is hereby admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on 5/9/2017. (lcegs1) (Entered: 05/09/2017) |
| 05/09/2017 | | |

| | | |
|---|---|---|
| | | MINUTE ORDER granting <u>80</u> motion for admission pro hac vice. W. Larkin Radney is hereby admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on 5/9/2017. (lcegs1) (Entered: 05/09/2017) |
| 05/30/2017 | <u>82</u> | ANSWER to <u>75</u> Intervenor Complaint by THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS.(Gerard, William) (Entered: 05/30/2017) |
| 05/30/2017 | <u>83</u> | Joint MOTION for Summary Judgment *on Administrative Record* by ALABAMA POWER COMPANY, STATE OF ALABAMA (Attachments: # <u>1</u> Exhibit 1 –– Glenn Declaration, # <u>2</u> Exhibit 2 –– Atkins Declaration, # <u>3</u> Exhibit 3 –– Peeples Declaration, # <u>4</u> Exhibit 4 –– Lumpkins Declaration, # <u>5</u> Exhibit 5 –– Engineering Regulation 1110–2–8154, # <u>6</u> Exhibit 6 –– 6th Am. Compl., Alabama v. USACE, # <u>7</u> Exhibit 7 –– Hearing Transcript, Alabama v. USACE)(Neiman, John) (Entered: 05/30/2017) |
| 06/12/2017 | <u>84</u> | NOTICE of Appearance by David A. Fitzgerald on behalf of ALABAMA MUNICIPAL ELECTRIC AUTHORITY (Fitzgerald, David) (Entered: 06/12/2017) |
| 06/13/2017 | <u>85</u> | Joint MOTION for Summary Judgment by BOARD OF WATER AND SEWER COMMISSIONERS OF THE CITY OF MOBILE, LAKE MARTIN RESOURCE ASSOCIATION, INC., RUSSELL LANDS, INC., WATER WORKS & SANITARY SEWER BOARD OF THE CITY OF MONTGOMERY, ALABAMA (Sharman, Jackson) (Entered: 06/13/2017) |
| 06/20/2017 | <u>86</u> | Joint MOTION to Modify Scheduling Order by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Text of Proposed Order)(McCullers, Stephen) Modified on 6/21/2017 to correct docket event/text (jf). (Entered: 06/20/2017) |
| 06/30/2017 | <u>87</u> | MOTION for leave to file Answers out of time by U.S. ARMY CORPS OF ENGINEERS (Attachments: # <u>1</u> Exhibit, # <u>2</u> Exhibit)(Schifman, Reuben) (Entered: 06/30/2017) |
| 06/30/2017 | <u>88</u> | NOTICE of Appearance by Reuben S. Schifman on behalf of U.S. ARMY CORPS OF ENGINEERS (Schifman, Reuben) (Entered: 06/30/2017) |
| 07/05/2017 | <u>89</u> | RESPONSE re <u>86</u> Joint MOTION to Modify Scheduling Order *(Plaintiffs and Intervenor–Plaintiffs' Joint Response)* filed by ALABAMA POWER COMPANY. (Byram, James) (Entered: 07/05/2017) |
| 07/06/2017 | | MINUTE ORDER granting <u>87</u> unopposed motion to file answers out of time. Federal defendants are reminded of their obligation to include with any motion a proposed order as required by Local Civil Rule 7(c). Signed by Judge Emmet G. Sullivan on 7/6/2017. (lcegs1) (Entered: 07/06/2017) |
| 07/07/2017 | <u>90</u> | NOTICE of Proposed Order by ALABAMA POWER COMPANY re <u>89</u> Response to motion (Byram, James) (Entered: 07/07/2017) |
| 07/12/2017 | <u>91</u> | REPLY to opposition to motion re <u>86</u> Joint MOTION to Modify Scheduling Order filed by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY, STATE OF GEORGIA. (Ellerhorst, Shelly) (Entered: 07/12/2017) |
| 07/12/2017 | | |

MINUTE ORDER granting <u>81</u> unopposed motion by the Alabama Municipal Electric Authority ("AMEA") to file an amici curiae brief. "An amicus curiae, defined as friend of the court,... does not represent the parties but participates only for the benefit of the Court." United States v. Microsoft Corp., No. 981232, 2002 WL 319366, at *2 (D.D.C. Feb. 28, 2002)(internal quotations omitted). Thus it is within the discretion of the Court to determine the fact, extent, and manner of participation by the amicus. Id. "'An amicus brief should normally be allowed when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case), or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide. Otherwise, leave to file an amicus curiae brief should be denied.'" Jin v. Ministry of State Sec., 557 F.Supp.2d 131, 137 (D.D.C. 2008)(quoting Ryan v. Commodity Futures Trading Commn, 125 F.3d 1062, 1064 (7th Cir.1997)). See also Local Civil Rule 7(o). AMEA was created pursuant to state statute to ensure that its participating members secure an adequate, dependable and economical power supply. The Court agrees that AMEA is not represented by a party to this litigation and that it would benefit the Court to be briefed from the perspective of the members of AMEA that purchase power from the US Army Corps of Engineers generated by projects in the Alabama–Coosa–Tallapoosa River Basin. AMEA shall file its brief by no later than December 18, 2017. Signed by Judge Emmet G. Sullivan on 7/12/2017. (lcegs1) (Entered: 07/12/2017)

| 07/12/2017 | MINUTE ORDER granting, over objection, <u>86</u> joint motion to modify scheduling order. Plaintiffs filed a joint motion for summary judgment on May 30, 2017 (50 pages). Intervenor–plaintiffs filed a joint motion for summary judgment on June 13, 2017 (25 pages). The defendant's combined cross–motion for summary judgment and opposition to plaintiffs motion for summary judgment shall by filed by no later than August 14, 2017 (50 pages). Intervenor–defendants' joint opposition to plaintiffs motion for summary judgment shall be filed by no later than August 28, 2017 (25 pages). Plaintiffs' joint opposition to defendants cross–motion for summary judgment and reply in support of plaintiffs' motion for summary judgment shall be filed by no later than October 12, 2017 (30 pages). Intervenor–plaintiffs' shall file their joint combined opposition and reply by no later than November 27, 2017 (15 pages). Defendant's reply in support of cross–motion for summary judgment shall be filed by no later than November 27, 2017 (30 pages). Intervenor–defendants' joint reply in support of its cross–motion for summary judgment shall be filed by no later than December 11, 2017 (15 pages). It is FURTHER ORDERED that the parties may file non–hyperlinked briefs in accordance with this schedule. By no later than December 18, 2017, the parties shall file E–Briefs containing hyperlinks to cited portions of the administrative record and points and authorities. The Court observes that E–Briefs adequately fulfill the purpose of Local Rule 7(n), which is to highlight for the Court the most relevant portions of a voluminous administrative record. In addition to electronic filing, the parties shall submit to the Court two hard copies and one USB drive containing all pleadings. All submissions to the Court shall be single–sided, double–spaced, and use 12–point Times New Roman font and one inch page margins. Each set of hard copies shall be in three–ring binders, with appropriate tables of contents and tabs, and the binders shall be clearly labeled to identify the pleadings therein. It is FURTHER ORDERED that by no later than December 18, 2017, the parties shall jointly submit one copy of each principal case or authority cited by any party. The points and authorities shall be in three–ring binders, with |

| | | |
|---|---|---|
| | | appropriate tables of contents and tabs, and the binders shall be clearly labeled to identify the contents therein. All pleadings submitted to the Court pursuant to this paragraph shall be printed or e–copied from the docketed pleading containing the ECF header. Signed by Judge Emmet G. Sullivan on 7/12/2017. (lcegs1) (Entered: 07/12/2017) |
| 07/13/2017 | | Set/Reset Deadlines: AMEA Amicus Brief due by 12/18/2017. (mac) (Entered: 07/13/2017) |
| 07/13/2017 | | Set/Reset Deadlines: Defendant's Combined Cross–Motion For Summary Judgment And Opposition To Plaintiffs Motion For Summary Judgment due by 8/14/2017. Intervenor–Defendants Joint Opposition To Plaintiffs Motion For Summary Judgment due by 8/28/2017. Plaintiffs' Joint Opposition To Defendants Cross–Motion For Summary Judgment And Reply In Support Of Plaintiffs' Motion For Summary Judgment due by 10/12/2017. Intervenor–Plaintiffs To File Their Joint Combined Opposition And Reply due by 11/27/2017. Defendant's Reply In Support Of Cross–Motion For Summary Judgment due by 11/27/2017. Intervenor–Defendants Joint Reply In Support OF Its Cross–Motion For Summary Judgment due by 12/11/2017. E–Briefs due by 12/18/17. (mac) (Entered: 07/13/2017) |
| 07/13/2017 | 92 | ANSWER to 34 Intervenor Complaint by U.S. ARMY CORPS OF ENGINEERS.(Schifman, Reuben) (Entered: 07/13/2017) |
| 07/13/2017 | 93 | ANSWER to 35 Intervenor Complaint by U.S. ARMY CORPS OF ENGINEERS.(Schifman, Reuben) (Entered: 07/13/2017) |
| 08/02/2017 | 94 | AMICUS BRIEF by ALABAMA MUNICIPAL ELECTRIC AUTHORITY (Fitzgerald, David) Modified event title on 8/3/2017 (znmw). (Entered: 08/02/2017) |
| 08/14/2017 | 95 | RESPONSE re 85 Joint MOTION for Summary Judgment , 83 Joint MOTION for Summary Judgment *on Administrative Record and Cross Motion for Summary Judgment* filed by U.S. ARMY CORPS OF ENGINEERS. (Schifman, Reuben) (Entered: 08/14/2017) |
| 08/14/2017 | 96 | Cross MOTION for Summary Judgment by U.S. ARMY CORPS OF ENGINEERS. (See Docket Entry 95 to view document). (nmw) (Entered: 08/15/2017) |
| 08/28/2017 | 97 | RESPONSE re 85 Joint MOTION for Summary Judgment , 83 Joint MOTION for Summary Judgment *on Administrative Record and Cross–Motion for Summary Judgment* filed by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY, STATE OF GEORGIA. (McCullers, Stephen) (Entered: 08/28/2017) |
| 08/28/2017 | 98 | Cross MOTION for Summary Judgment by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY, STATE OF GEORGIA. (See Docket Entry 97 to view document). (znmw) (Entered: 08/29/2017) |
| 10/12/2017 | 99 | REPLY to opposition to motion re 83 Joint MOTION for Summary Judgment *on Administrative Record* filed by ALABAMA POWER COMPANY, STATE OF ALABAMA. (Neiman, John) Modified link on 10/13/2017 (znmw). (Entered: 10/12/2017) |
| 10/12/2017 | 100 | Memorandum in opposition to re 96 MOTION for Summary Judgment, 98 MOTION for Summary Judgment filed by ALABAMA POWER COMPANY, STATE OF |

| | | |
|---|---|---|
| | | ALABAMA. (See Docket Entry 99 to view document). (znmw) (Entered: 10/13/2017) |
| 10/26/2017 | 101 | REPLY to opposition to motion re 85 Joint MOTION for Summary Judgment filed by LAKE MARTIN RESOURCE ASSOCIATION, INC., RUSSELL LANDS, INC.. (Sharman, Jackson) (Entered: 10/26/2017) |
| 11/27/2017 | 102 | REPLY to opposition to motion re 96 MOTION for Summary Judgment filed by THOMAS P. BOSTICK, JOHN J CHYTKA, JO−ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS. (Gerard, William) (Entered: 11/27/2017) |
| 12/11/2017 | 103 | REPLY to opposition to motion re 98 MOTION for Summary Judgment filed by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY, STATE OF GEORGIA. (Ellerhorst, Shelly) (Entered: 12/11/2017) |
| 12/14/2017 | 104 | ERRATA by ALABAMA POWER COMPANY, STATE OF ALABAMA re 99 Reply to opposition to Motion, 83 Joint MOTION for Summary Judgment *on Administrative Record* (Neiman, John) Modified event title on 12/15/2017 (znmw). (Entered: 12/14/2017) |
| 12/15/2017 | 105 | NOTICE *of Filing* by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY (McCullers, Stephen) (Entered: 12/15/2017) |
| 12/15/2017 | 106 | NOTICE *of Record Citation Corrections* by BOARD OF WATER AND SEWER COMMISSIONERS OF THE CITY OF MOBILE, LAKE MARTIN RESOURCE ASSOCIATION, INC., RUSSELL LANDS, INC., WATER WORKS & SANITARY SEWER BOARD OF THE CITY OF MONTGOMERY, ALABAMA (Sharman, Jackson) (Entered: 12/15/2017) |
| 12/15/2017 | 107 | NOTICE *of Submission of Hyperlinked Briefs of the Intervenor Plaintiffs* by BOARD OF WATER AND SEWER COMMISSIONERS OF THE CITY OF MOBILE, LAKE MARTIN RESOURCE ASSOCIATION, INC., RUSSELL LANDS, INC., WATER WORKS & SANITARY SEWER BOARD OF THE CITY OF MONTGOMERY, ALABAMA (Sharman, Jackson) (Entered: 12/15/2017) |
| 12/15/2017 | 108 | NOTICE *of Filing E−Briefs pursuant to Minute Order dated July 12, 2017,* by ALABAMA POWER COMPANY, STATE OF ALABAMA (Neiman, John) (Entered: 12/15/2017) |
| 12/18/2017 | 109 | NOTICE *of Filing of E−Briefs* by THOMAS P. BOSTICK, JOHN J CHYTKA, JO−ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS re Order on Motion to Modify,,,,,,,,, (Gerard, William) (Entered: 12/18/2017) |
| 02/26/2018 | 110 | MOTION to Withdraw as Attorney *as sponsoring attorney for William S. Cox* by LAKE MARTIN RESOURCE ASSOCIATION, INC., RUSSELL LANDS, INC. (Sharman, Jackson) Modified event title on 2/27/2018 (znmw). (Entered: 02/26/2018) |
| 03/27/2018 | | MINUTE ORDER granting 110 motion to withdraw pro hac vice counsel William S. Cox. Signed by Judge Emmet G. Sullivan on 3/27/2018. (lcegs1) (Entered: 03/27/2018) |
| 05/08/2018 | 111 | NOTICE OF WITHDRAWAL OF APPEARANCE as to THOMAS P. BOSTICK, JOHN J CHYTKA, JO−ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS. Attorney William E. Gerard |

| | | |
|---|---|---|
| | | terminated. (Gerard, William) (Entered: 05/08/2018) |
| 09/07/2018 | 112 | NOTICE OF WITHDRAWAL OF APPEARANCE as to STATE OF GEORGIA. Attorney Sarah Hawkins Warren terminated. (Warren, Sarah) (Entered: 09/07/2018) |
| 09/17/2018 | 113 | NOTICE of Appearance by Andrew Pinson on behalf of STATE OF GEORGIA (Pinson, Andrew) (Entered: 09/17/2018) |
| 10/10/2018 | 114 | NOTICE OF WITHDRAWAL OF APPEARANCE as to ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY. Attorney Stephen A. McCullers terminated. (McCullers, Stephen) (Entered: 10/10/2018) |
| 06/25/2019 | 115 | NOTICE OF WITHDRAWAL OF APPEARANCE as to ALABAMA MUNICIPAL ELECTRIC AUTHORITY. Attorney Jeffrey David Skinner terminated. (Fitzgerald, David) (Entered: 06/25/2019) |
| 06/26/2019 | 116 | NOTICE of Change of Address by David A. Fitzgerald (Fitzgerald, David) (Entered: 06/26/2019) |
| 11/06/2019 | 117 | NOTICE OF SUBSTITUTION OF COUNSEL by Edmund G. LaCour, Jr on behalf of STATE OF ALABAMA Substituting for attorney Andrew Lynn Brasher (LaCour, Edmund) (Entered: 11/06/2019) |
| 05/28/2020 | 118 | NOTICE OF WITHDRAWAL OF APPEARANCE as to THOMAS P. BOSTICK, JO–ELLEN DARCY, JOHN M. MCHUGH, U.S. ARMY CORPS OF ENGINEERS. Attorney Eileen T. McDonough terminated. (McDonough, Eileen) (Entered: 05/28/2020) |
| 08/04/2020 | 119 | NOTICE by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY, STATE OF GEORGIA re 97 Response to motion, (Attachments: # 1 Exhibit May 22, 2020 Opinion and Order)(Fortuna, John) (Entered: 08/04/2020) |
| 08/13/2020 | 120 | REPSONSE re 119 to Supplemental Authority Notice by ALABAMA POWER COMPANY, STATE OF ALABAMA (Neiman, John) Modified on 8/13/2020 to correct docket event/text (zjf). (Entered: 08/13/2020) |
| 08/14/2020 | 121 | Unopposed MOTION to Lift Stay by STATE OF ALABAMA (Attachments: # 1 Text of Proposed Order Proposed Order Lifting Stay)(Neiman, John) (Entered: 08/14/2020) |
| 08/19/2020 | | MINUTE ORDER granting 121 unopposed motion to lift stay. Signed by Judge Emmet G. Sullivan on 8/19/2020. (lcegs3) (Entered: 08/19/2020) |
| 08/20/2020 | 122 | REPLY re 119 Notice (Other) filed by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY, STATE OF GEORGIA. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Ellerhorst, Shelly) (Entered: 08/20/2020) |
| 03/03/2021 | 123 | NOTICE of Appearance by Michael M. Linder, Jr on behalf of BOARD OF WATER AND SEWER COMMISSIONERS OF THE CITY OF MOBILE (Linder, Michael) (Entered: 03/03/2021) |
| 11/10/2021 | 124 | NOTICE of Appearance by Elliot Higgins on behalf of All Defendants (Higgins, Elliot) (Entered: 11/10/2021) |
| 12/29/2021 | 125 | NOTICE OF WITHDRAWAL OF APPEARANCE as to ALABAMA POWER COMPANY. Attorney Peter Douglas Keisler terminated. (Keisler, Peter) (Entered: |

| | | |
|---|---|---|
| | | 12/29/2021) |
| 01/03/2022 | 126 | NOTICE OF WITHDRAWAL OF APPEARANCE as to STATE OF GEORGIA. Attorney Andrew Alan Pinson terminated. (Ellerhorst, Shelly) (Entered: 01/03/2022) |
| 01/14/2022 | 127 | Joint MOTION for Briefing Schedule by U.S. ARMY CORPS OF ENGINEERS (Attachments: # 1 Exhibit, # 2 Exhibit)(Schifman, Reuben) Modified on 1/16/2022 to correct docket event/text (zjf). (Entered: 01/14/2022) |
| 01/19/2022 | | MINUTE ORDER granting 127 joint motion for briefing schedule. The parties shall abide by the following schedule: (1) motions shall be filed by no later than February 9, 2022; (2) the Federal Defendants shall file any response to any such motion within 45 days of the motion; (3) the other parties shall file a response to the motion within 60 days of the motion; and (4) the movant shall file a reply in support of their motion, if any, within 14 days of the last filed response. Signed by Judge Emmet G. Sullivan on 1/19/2022. (lcegs3) (Entered: 01/19/2022) |
| 01/20/2022 | | Set/Reset Deadlines: Motions due by 2/9/2022. (mac) (Entered: 01/20/2022) |
| 02/09/2022 | 128 | MOTION for Leave to File *Supplemental Complaint* by STATE OF ALABAMA. (Attachments: # 1 Supplement Complaint (Proposed), # 2 Text of Proposed Order)(Neiman, John) (Entered: 02/09/2022) |
| 02/09/2022 | 129 | Supplemental MOTION for Summary Judgment *Based on the Preclusive Effect of an Intervening Judgment* by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY, STATE OF GEORGIA. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Fortuna, John) (Entered: 02/09/2022) |
| 02/10/2022 | 130 | NOTICE OF WITHDRAWAL OF APPEARANCE as to ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY. Attorney Christie L. Iannetta terminated. (Fortuna, John) (Entered: 02/10/2022) |
| 03/28/2022 | 131 | NOTICE of Appearance by Angela Ellis on behalf of THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS (Ellis, Angela) (Entered: 03/28/2022) |
| 03/28/2022 | 132 | Memorandum in opposition to re 128 MOTION for Leave to File *Supplemental Complaint* filed by THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS. (Ellis, Angela) (Entered: 03/28/2022) |
| 04/08/2022 | 133 | NOTICE OF WITHDRAWAL OF APPEARANCE as to U.S. ARMY CORPS OF ENGINEERS. Attorney Reuben S. Schifman terminated. (Schifman, Reuben) (Entered: 04/08/2022) |
| 04/11/2022 | 134 | Memorandum in opposition to re 129 Supplemental MOTION for Summary Judgment *Based on the Preclusive Effect of an Intervening Judgment* filed by STATE OF ALABAMA. (Attachments: # 1 Exhibit 1 –– ACF MSJ, # 2 Exhibit 2 –– ACF Reply, # 3 Text of Proposed Order)(Neiman, John) (Entered: 04/11/2022) |
| 04/11/2022 | 135 | RESPONSE re 129 Supplemental MOTION for Summary Judgment *Based on the Preclusive Effect of an Intervening Judgment* filed by BOARD OF WATER AND SEWER COMMISSIONERS OF THE CITY OF MOBILE, LAKE MARTIN RESOURCE ASSOCIATION, INC., RUSSELL LANDS, INC., WATER WORKS |

| | | |
|---|---|---|
| | | & SANITARY SEWER BOARD OF THE CITY OF MONTGOMERY, ALABAMA. (Attachments: # 1 Text of Proposed Order Proposed Order)(Sasser, Robert) (Entered: 04/11/2022) |
| 04/11/2022 | 136 | Memorandum in opposition to re 128 MOTION for Leave to File *Supplemental Complaint* filed by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY, STATE OF GEORGIA. (Ellerhorst, Shelly) (Entered: 04/11/2022) |
| 04/11/2022 | 137 | Memorandum in opposition to re 129 Supplemental MOTION for Summary Judgment *Based on the Preclusive Effect of an Intervening Judgment* filed by ALABAMA POWER COMPANY. (Attachments: # 1 Exhibit Exhibit 1–A, # 2 Exhibit Exhibit 1–B, # 3 Exhibit Exhibit 1–C, # 4 Exhibit Exhibit 2, # 5 Exhibit Exhibit 3, # 6 Exhibit Exhibit 4, # 7 Exhibit Exhibit 5)(Byram, James) (Entered: 04/11/2022) |
| 04/25/2022 | 138 | REPLY to opposition re 128 MOTION for Leave to File *Supplemental Complaint* filed by STATE OF ALABAMA. (Neiman, John) Modified on 4/26/2022 to correct docket link (zjf). (Entered: 04/25/2022) |
| 04/25/2022 | 139 | REPLY to opposition to motion re 129 Supplemental MOTION for Summary Judgment *Based on the Preclusive Effect of an Intervening Judgment* filed by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY, STATE OF GEORGIA. (Fortuna, John) (Entered: 04/25/2022) |
| 05/14/2022 | 140 | NOTICE of Change of Address by John L. Fortuna (Fortuna, John) (Entered: 05/14/2022) |
| 05/14/2022 | 141 | NOTICE of Change of Address by Lewis Bondurant Jones (Jones, Lewis) (Entered: 05/14/2022) |
| 11/18/2022 | | MINUTE ORDER granting 128 Motion for Leave to File a Supplemental Complaint. Plaintiff seeks to file a supplemental complaint arising out of revisions the Federal Defendants made to the Water Control Manual for the Alabama–Coosa–Tallapoosa River Basin ("ACT WCM") in 2021. Pending before the Court are the parties' fully briefed cross motions for summary judgment arising out of ACT WCM revisions made in 2015. Also pending is the Intervenor–Defendants' supplemental motion for summary judgment. Rule 15(d) of the Federal Rules of Civil Procedure provides that a court "may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). In determining whether to grant motions for supplemental pleadings, courts are to address delay and prejudice as "such motions are to be 'freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action.'" Hall v. CIA, 437 F.3d 94, 101 (D.C. Cir. 2006)(quoting 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE, § 1504, at 186–87 (2d ed. 1990). Federal Defendants and the Intervenor–Defendants argue that allowing Plaintiff to file a supplemental complaint would unduly delay this litigation because of the time necessary to respond to the supplemental complaint, compile the administrative record, and brief cross motions for summary judgment. See ECF No. 132 at 4–5, ECF No. 136 at 12–13, 18–19. Plaintiff responds that there need not be a delay because the Court could consider the pending motions before it considers motions arising out of the 2021 ACT WCM revisions. The Court agrees |

with the Plaintiff and intends to address the pending motions before addressing motions arising out of the ACT WCM revisions made in 2021. Accordingly, filing a supplemental complaint will cause no undue delay. As to prejudice, the Federal Defendants argue that Plaintiff will not be prejudiced by denying the motion because it can raise these claims in a separate lawsuit, but they would be prejudiced because they would not have 60 days to respond to a supplemental complaint since Rule 15(d) does not specify a time for a response. ECF No. 132 at 6. Rule 15(d) provides that "[t]he court may order that the opposing party plead to the supplemental complaint within a specified time." Accordingly, the Court can order Defendants to respond to the supplemental complaint within 60 days of the Court approving filing. Federal Defendants and Defendant Intervenors also argue that allowing the supplemental complaint would "alter the scope" of the litigation. ECF No. 132 at 3; ECF No. 136 at 14–18. They acknowledge the similarities between Plaintiffs original claims and proposed supplemental claims, but point out that allowing supplementation would result in two sets of claims arising out of separate agency actions, each with its own Record of Decision and Administrative Record. ECF No. 132 at 3; ECF No. 136 at 10. They point out that courts in this district deny leave to add supplemental claims in such situations. ECF No. 132 at 3–4; ECF No. 136 at 14–16. Here, however, the 2015 revisions and the 2021 revisions relate to each other, the latter do not moot for former, the administrative records overlap, and the decision was made by the same decision–maker. Accordingly, the authority they cite is inapposite. The Court acknowledges that Plaintiff's legal claims in the original and proposed supplemental complaint are distinct; however, the Court's familiarity with the factual backdrop and the Administrative Record for the 2015 revisions will create efficiencies and will dispose of the entire controversy between the parties. Finally, the Court finds unpersuasive the Defendant Intervenor's argument that granting leave to supplement "risks creating a morass of ill–defined litigation." ECF No. 136 at 18–19. Rather, granting leave to supplement will merely result in a second round of cross motions for summary judgment. For all these reasons, the motion is GRANTED and the Supplemental Complaint is deemed filed. Defendants and Defendant–Intervenors shall respond to the Supplemental Complaint by no later than January 18, 2023. Signed by Judge Emmet G. Sullivan on 11/18/2022. (lcegs1) (Entered: 11/18/2022)

| | | |
|---|---|---|
| 11/18/2022 | | Set/Reset Deadlines: Defendants And Defendant–Intervenors Response To The Supplemental Complaint due by 1/18/2023. (mac) (Entered: 11/18/2022) |
| 11/18/2022 | 143 | SUPPLEMENTAL COMPLAINT against ALL DEFENDANTS filed by STATE OF ALABAMA.(ztth); Modified Date Filed on 1/18/2023 (ztth). (Entered: 01/18/2023) |
| 12/01/2022 | 142 | MOTION to Withdraw as Attorney by WATER WORKS & SANITARY SEWER BOARD OF THE CITY OF MONTGOMERY, ALABAMA. (Sasser, Robert) (Entered: 12/01/2022) |
| 12/02/2022 | | MINUTE ORDER granting 142 motion to withdraw the appearance of Robert Sasser. Signed by Judge Emmet G. Sullivan on 12/2/2022. (lcegs1) (Entered: 12/02/2022) |
| 01/18/2023 | 144 | ANSWER to 143 Amended Complaint by STATE OF GEORGIA.(Ellerhorst, Shelly) (Entered: 01/18/2023) |
| 01/18/2023 | 145 | ANSWER to 143 Amended Complaint by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY.(Fortuna, John) (Entered: 01/18/2023) |
| 01/18/2023 | 146 | |

| | | |
|---|---|---|
| | | ANSWER to 143 Amended Complaint by THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS.(Ellis, Angela) (Entered: 01/18/2023) |
| 02/17/2023 | 147 | Joint MOTION for Scheduling Order by THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS. (Attachments: # 1 Proposed Order)(Ellis, Angela) (Entered: 02/17/2023) |
| 02/22/2023 | | MINUTE ORDER granting 147 Motion for Scheduling Order. The following deadlines shall govern this case: (1) Federal Defendants shall file a certified list of the contents of that administrative record for the final action challenged in Plaintiff State of Alabama's supplemental complaint by no later than May 19, 203; (2) Within 21 days of a ruling on the pending dispositive motions, the Parties shall confer and file a proposed schedule for proceeding with the remaining claims. Signed by Judge Emmet G. Sullivan on 2/22/2023. (lcegs1) (Entered: 02/22/2023) |
| 02/23/2023 | | Set/Reset Deadlines: Federal Defendants Certified List Of The Contents Of Administrative Record due by 5/19/2023. (mac) (Entered: 02/23/2023) |
| 04/05/2023 | | MINUTE ORDER directing the federal defendants to provide to the Court on a flash drive by no later than April 12, 2023, a complete copy of the Administrative Record associated with the pending cross motions for summary judgment, ECF Nos. 83, 85, 96, and 98. Signed by Judge Emmet G. Sullivan on 4/5/2023. (lcegs1) (Entered: 04/05/2023) |
| 05/19/2023 | 148 | NOTICE *of Filing of Certified List of Contents of, and Production of, Administrative Record for the August 2021 Record of Decision* by THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS (Attachments: # 1 Certification of the Administrative Record for the August 2021 Record of Decision, # 2 List of Contents of Administrative Record)(Higgins, Elliot) (Entered: 05/19/2023) |
| 11/09/2023 | 149 | ORDER granting 96 Defendants' Cross–Motion for Summary Judgment; granting 98 Intervenor–Defendants' Joint Cross–Motion for Summary Judgment; denying 83 Plaintiffs' Joint Motion for Summary Judgment; denying 85 Intervenor–Plaintiffs' Joint Motion for Summary Judgment; and denying 129 Intervenor–Defendants' Supplemental Motion for Summary Judgment Based on the Preclusive Effect of an Intervening Judgment. Signed by Judge Emmet G. Sullivan on 11/9/2023. (lcegs3) (Entered: 11/09/2023) |
| 11/09/2023 | 150 | MEMORANDUM OPINION. Signed by Judge Emmet G. Sullivan on 11/9/2023. (lcegs3) (Entered: 11/09/2023) |
| 11/28/2023 | 151 | Joint MOTION for Scheduling Order by STATE OF ALABAMA. (Neiman, John) (Entered: 11/28/2023) |
| 11/28/2023 | | MINUTE ORDER denying, without prejudice, 151 Motion for Scheduling Order. The parties have failed to include a proposed order as required by Local Civil Rule 7(c). Signed by Judge Emmet G. Sullivan on November 28, 2023. (lcegs1) (Entered: 11/28/2023) |
| 11/29/2023 | 152 | Joint MOTION for Scheduling Order by STATE OF ALABAMA. (Attachments: # 1 Text of Proposed Order Proposed Order Granting Motion for Scheduling Order)(Neiman, John) (Entered: 11/29/2023) |

| 11/29/2023 | | MINUTE ORDER granting 152 Motion for Scheduling Order. The following deadlines shall govern this matter: (1) The parties shall complete their review of the administrative record and provide correspondence to the federal defendants raising any concerns by no later than February 28, 2024; (2) The parties shall attempt to resolve record disputes without Court involvement by no later than March 13, 2024; (3) If the parties are unable to resolve any record disputes without Court involvement, the parties shall adhere to the following schedule for resolution of any disputes by the Court: (a) Any motion challenging the adequacy or completeness of the record shall be filed by no later than March 27, 2024; (b) any response/opposition shall be filed by no later than April 26, 2024; (c) and any reply shall be filed by no later than May 10, 2024; (4) Fourteen days after (a) an order resolving all administrative record disputes, (b) March 27 if the parties resolve any record disputes without Court involvement, or (c) February 28 if the parties do not raise any concerns about the record, federal defendants will either file the new certified list of the contents of the administrative record with the Court or notify the Court that the May 19, 2023 certified record remains the operative record (the "Record Notification Date"). If the federal defendants add or remove any documents from the record, the federal defendants shall provide a complete copy of the revised record, with certified list, to the Court on flash drive(s); and (5) Within 21 days after the Record Notification Date, the parties will confer and file a joint proposal regarding the briefing schedule, page limits, and any other pertinent matters concerning dispositive motions on the remaining claims. Signed by Judge Emmet G. Sullivan on 11/29/2023. (lcegs1) (Entered: 11/29/2023) |
| 11/30/2023 | | Set/Reset Deadlines: Motion Challenging The Adequacy Or Completeness Of The Record due by 3/27/2024. Response/Opposition due by 4/26/2024 Reply due by 5/10/2024. Federal Defendants File The New Certified List Of The Contents Of The Administrative Record With The Court Or Notify The Court By 2/28/2024. (mac) (Entered: 11/30/2023) |
| 12/14/2023 | | Case directly reassigned to Judge Loren L. AliKhan. Judge Emmet G. Sullivan is no longer assigned to the case. (ztnr) (Entered: 12/14/2023) |
| 04/10/2024 | 153 | NOTICE *of Filing of Certified List of Contents of, and Production of, Revised Administrative Record for the August 2021 Record of Decision* by THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS (Attachments: # 1 Exhibit 1 – Certification of the revised Administrative Record for the August 2021 Record of Decision, # 2 Exhibit 2 – List of Contents of the revised Administrative Record)(Ellis, Angela) (Entered: 04/10/2024) |
| 04/30/2024 | 154 | Joint MOTION for Scheduling Order *On Remaining Claims* by STATE OF ALABAMA. (Attachments: # 1 Text of Proposed Order)(Neiman, John) (Entered: 04/30/2024) |
| 05/02/2024 | 155 | ORDER: Upon consideration of the parties' joint motion for a scheduling order 154 , it is hereby ORDERED that the enclosed schedule shall govern summary judgment briefing on the remaining claims in this case. See Order for details. Signed by Judge Loren L. AliKhan on 05/02/2024. (lclla2) Modified on 5/3/2024 to update order type (zcdw). (Entered: 05/02/2024) |
| 06/26/2024 | 156 | MOTION for Summary Judgment *on Claims in Supplemental Complaint* by STATE OF ALABAMA. (Attachments: # 1 Appendix A –– SeFPC v. Geren, # 2 Appendix B –– 2012 Stockdale Opinion)(Neiman, John) (Entered: 06/26/2024) |

| 08/21/2024 | 157 | RESPONSE re 156 MOTION for Summary Judgment *on Claims in Supplemental Complaint* filed by THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS. (Ellis, Angela) (Entered: 08/21/2024) |
|---|---|---|
| 08/21/2024 | 158 | Cross MOTION for Summary Judgment by THOMAS P. BOSTICK, JOHN J CHYTKA, JO–ELLEN DARCY, JOHN M. MCHUGH, C. DAVID TURNER, U.S. ARMY CORPS OF ENGINEERS. (Ellis, Angela) (Entered: 08/21/2024) |
| 09/11/2024 | 159 | Cross MOTION for Summary Judgment *on Claims in Supplemental Complaint* by STATE OF GEORGIA. (Ellerhorst, Shelly) (Entered: 09/11/2024) |
| 09/11/2024 | 160 | RESPONSE re 156 MOTION for Summary Judgment *on Claims in Supplemental Complaint* filed by STATE OF GEORGIA. (Ellerhorst, Shelly) (Entered: 09/11/2024) |
| 09/11/2024 | 161 | Cross MOTION for Summary Judgment *on Claims in Supplemental Complaint* by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY. (Attachments: # 1 Exhibit Basin Maps, # 2 Exhibit Allatoona Lake Storage Volumes, # 3 Exhibit EM 1165–2–105 (Sept. 18, 1961), # 4 Exhibit Joint Brief of Appellees (Excerpts))(Fortuna, John) (Entered: 09/11/2024) |
| 09/11/2024 | 162 | RESPONSE re 156 MOTION for Summary Judgment *on Claims in Supplemental Complaint* filed by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY. (Attachments: # 1 Exhibit Basin Maps, # 2 Exhibit Allatoona Lake Storage Volumes, # 3 Exhibit EM 1165–2–105 (Sept. 18, 1961), # 4 Exhibit Joint Brief of Appellees (Excerpts))(Fortuna, John) (Entered: 09/11/2024) |
| 09/23/2024 | 163 | MOTION to Dismiss *Pursuant to Rule 41* by BOARD OF WATER AND SEWER COMMISSIONERS OF THE CITY OF MOBILE. (Attachments: # 1 Text of Proposed Order Proposed Order)(Taylor, Frank) (Entered: 09/23/2024) |
| 09/23/2024 | | MINUTE ORDER: Upon consideration of Plaintiff–Intervenor Board of Water and Sewer Commissioners of the City of Mobile's Motion to Dismiss 163 and pursuant to Federal Rule of Civil Procedure 41(a)(2), it is hereby ORDERED that the motion is GRANTED and the court DISMISSES Plaintiff–Intervenor Board of Water and Sewer Commissioners of the City of Mobile from this case without prejudice. The case will proceed with the remaining parties, and the court will rule on the remaining motions forthwith. Signed by Judge Loren L. AliKhan on 09/23/2024. (lclla2) (Entered: 09/23/2024) |
| 10/16/2024 | 164 | REPLY to opposition to motion re 156 Motion for Summary Judgment filed by STATE OF ALABAMA. (Neiman, John) (Entered: 10/16/2024) |
| 10/16/2024 | 165 | RESPONSE re 158 Cross MOTION for Summary Judgment , 161 Cross MOTION for Summary Judgment *on Claims in Supplemental Complaint*, 159 Cross MOTION for Summary Judgment *on Claims in Supplemental Complaint* filed by STATE OF ALABAMA. (Neiman, John) (Entered: 10/16/2024) |
| 11/20/2024 | 166 | REPLY to opposition to motion re 158 Motion for Summary Judgment filed by U.S. ARMY CORPS OF ENGINEERS, JOHN M. MCHUGH, JO–ELLEN DARCY, THOMAS P. BOSTICK, C. DAVID TURNER, JOHN J CHYTKA. (Ellis, Angela) (Entered: 11/20/2024) |
| 12/11/2024 | 167 | |

| | | |
|---|---|---|
| | | REPLY to opposition to motion re <u>159</u> Motion for Summary Judgment *on Claims in Supplemental Complaint* filed by STATE OF GEORGIA. (Ellerhorst, Shelly) (Entered: 12/11/2024) |
| 12/11/2024 | <u>168</u> | REPLY to opposition to motion re <u>161</u> Motion for Summary Judgment, filed by ATLANTA REGIONAL COMMISSION, COBB COUNTY MARIETTA WATER AUTHORITY. (Fortuna, John) (Entered: 12/11/2024) |
| 03/31/2025 | <u>169</u> | MEMORANDUM OPINION regarding Plaintiff's Motion for Summary Judgment <u>156</u> , Defendant's Cross–Motion for Summary Judgment <u>158</u> , and Intervenor–Defendants' Cross–Motions for Summary Judgment <u>159</u> <u>161</u> . See Opinion for details. Signed by Judge Loren L. AliKhan on 3/31/2025. (lclla3) (Entered: 03/31/2025) |
| 03/31/2025 | <u>170</u> | ORDER: For the reasons explained in the court's Memorandum Opinion <u>169</u> , it is hereby ORDERED that Plaintiff's Motion for Summary Judgment <u>156</u> is DENIED, Defendant's Cross–Motion for Summary Judgment <u>158</u> is GRANTED, and Intervenor–Defendants' Cross–Motions for Summary Judgment <u>159</u> <u>161</u> are GRANTED. This Order constitutes a final judgment of the court within the meaning of Rule 58(a) of the Federal Rules of Civil Procedure. The Clerk of Court is directed to terminate the case. Signed by Judge Loren L. AliKhan on 3/31/2025. (lclla3) (Entered: 03/31/2025) |
| 05/28/2025 | <u>171</u> | NOTICE OF APPEAL TO DC CIRCUIT COURT as to <u>170</u> Order on Motion for Summary Judgment,,,,,,,,,,, by STATE OF ALABAMA. Filing fee $ 605, receipt number ADCDC–11720042. Fee Status: Fee Paid. Parties have been notified. (Neiman, John) (Entered: 05/28/2025) |

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF ALABAMA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )    CIVIL ACTION NO. 1:15-cv-696 (LLA) |
| UNITED STATES ARMY CORPS OF EN- | ) |
| GINEERS, et al., | ) |
| | ) |
|     Defendants. | ) |

### NOTICE OF APPEAL

Plaintiff State of Alabama appeals to the United States Court of Appeals for the District of Columbia Circuit from the final judgment issued by this Court against Plaintiff State of Alabama and in favor of all Defendants on March 31, 2025 (ECF No. 170), which constitutes a final judgment as to the entire case in accordance with Rule 58(a) of the Federal Rules of Civil Procedure. In accordance with D.C. Circuit Rule 3(c)(4), this notice of appeal encompasses all orders that, for purposes of appeal, merge into the designated final judgment.

Respectfully submitted,

s/ John C. Neiman, Jr.
One of the Attorneys for Plaintiff Alabama

**OF COUNSEL:**

| | |
|---|---|
| Edmund Lacour, Solicitor General | John C. Neiman, Jr. |
| (*Appearing under LCvR 83.2(f)*) | MAYNARD NEXSEN PC |
| OFFICE OF THE ALABAMA ATTORNEY GENERAL | 1901 Sixth Avenue N, Suite 1700 |
| 501 Washington Avenue | Birmingham, AL 35203 |
| Montgomery AL 36104 | jneiman@maynardnexsen.com |
| elacour@ago.state.al.us | |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

STATE OF ALABAMA,

      *Plaintiff*,

    v.

UNITED STATES ARMY CORPS OF
ENGINEERS, *et al.*,

      *Defendants*,

   and

STATE OF GEORGIA, *et al.*,

      *Intervenor-Defendants*.

Civil Action No. 15‑696 (LLA)

## <u>ORDER</u>

For the reasons stated in the court's Memorandum Opinion, ECF No. 169, it is hereby

**ORDERED** that the State of Alabama's Motion for Summary Judgment, ECF No. 156, is **DENIED**.

It is further

    **ORDERED** that the U.S. Army Corps of Engineers' Cross-Motion for Summary Judgment,

ECF No. 158, is **GRANTED**.  It is further

    **ORDERED** that the State of Georgia's Cross-Motion for Summary Judgment, ECF No. 159,

is **GRANTED**.  And it is further

    **ORDERED** that the Atlanta Regional Commission and Cobb County-Marietta Water

Authority's Cross-Motion for Summary Judgment, ECF No. 161, is **GRANTED**.

This Order constitutes a final judgment of the court within the meaning of Rule 58(a) of the Federal Rules of Civil Procedure.  The Clerk of Court is directed to terminate the case.

**SO ORDERED.**

_____
LOREN L. ALIKHAN
United States District Judge

Date:   March 31, 2025

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| STATE OF ALABAMA, |
|     *Plaintiff*, |
|   v. |
| UNITED STATES ARMY CORPS OF ENGINEERS, *et al.*, |
|     *Defendants*, |
|   and |
| STATE OF GEORGIA, *et al.*, |
|     *Intervenor-Defendants*. |

Civil Action No. 15 - 696 (LLA)

**MEMORANDUM OPINION**

   This case concerns the operation of a dam and attached reservoir at Allatoona Lake, near Cartersville, Georgia.  The project plays a key role in controlling water supplies for the Alabama-Coosa-Tallapoosa River Basin ("ACT Basin") and is managed pursuant to operational manuals created by the U.S. Army Corps of Engineers (the "Corps").  In 2015, the State of Alabama sued, arguing that the Corps' newly issued 2015 operating manual for the ACT Basin was unlawful.  ECF No. 1.  In 2023, after several years of litigation, the court (Sullivan, J.) issued a memorandum opinion granting summary judgment in favor of the Corps.  ECF No. 150.  In the interim, however, the Corps had updated its operational manual in 2021 to grant the State of Georgia's request for additional water supplies, prompting Alabama to file a supplemental complaint.  ECF No. 143.  While related to the original complaint, the supplemental complaint raises distinct legal issues and challenges the Corps' authority to grant Georgia's request under the Water Supply Act ("WSA"),

43 U.S.C. § 390b.  ECF No. 143.  The parties, including several intervenor-defendants, now move for summary judgment on the supplemental complaint.  ECF Nos. 156, 158, 159, 161.  For the reasons explained below, the court will deny Alabama's motion and grant the Corps' and Intervenor-Defendants' cross-motions.

## I.    BACKGROUND

### A.    Statutory Background

In 1958, Congress passed the Water Supply Act, 43 U.S.C. § 390b, instructing the Corps to "participate and cooperate with States and local interests" to develop water supply mechanisms. 43 U.S.C. § 390b(a).  To do so, Congress gave the Corps the authority to include water storage "in any [Corps] reservoir project" and to "impound water for present or anticipated future demand or need for municipal or industrial water."  *Id.* § 390b(b).

Congress did, however, impose certain restrictions on the Corps' authority.  Most relevant here, the Corps must seek Congressional approval for any "[m]odifications of a reservoir project" authorized to include water-supply storage if those modifications would (1) "seriously affect the purposes for which the project was authorized," or (2) "involve major structural or operational changes."  *Id.* § 390b(e).  Congress did not define either phrase.

### B.    History of the Allatoona Project

The Alabama, Coosa, and Tallapoosa Rivers, along with their tributaries and drainage areas, form the water system known as the ACT Basin.  *Alabama v. U.S. Army Corps of Eng'rs*, 704 F. Supp. 3d 20, 50 (D.D.C. 2023).  The ACT Basin comprises a total of 22,739 square miles across both Alabama and Georgia.  *Id.*  Many of its rivers and tributaries flow from Georgia, through Alabama, and into the Gulf of Mexico.  *Id.*

2

This case concerns the Allatoona Project, which is located on the Etowah River in Georgia and part of the ACT Basin. *Id.* at 51. The Etowah River flows southwesterly from northern Georgia until it joins the Coosa River near Rome, Georgia. *Id.* at 51, 54. The Coosa River eventually feeds into the Tallapoosa River near Montgomery, Alabama to form the Alabama River. *Id.* The Allatoona Project consists of the Allatoona Dam and the reservoir it forms, known as the Allatoona Lake. *Id.* at 51. It sits roughly at the midpoint of the Etowah River, about thirty miles north of Atlanta. Administrative Record ("AR") 5306. Allatoona Lake's watershed (all the land that drains toward a body of water) is 1,122 square miles, or just under five percent of the ACT Basin. *Alabama*, 704 F. Supp. 3d at 51. Because the downstream water demand in the ACT Basin tends to exceed supply during the summer, the Corps "store[s] water when there is an abundance of rain" and releases it "when there is less rain, ensuring that all water needs can be met throughout the year." *Id.* at 52.

The Allatoona Dam was originally built to control floods, regulate stream flow for navigation, and develop hydroelectric power. *Id.*; Flood Control Act of 1941 ("FCA"), Pub. L. No. 77-228, 55 Stat. 638, 638-41 (1941). The Corps completed the dam in 1949 and began operating it around June 1950. *Alabama*, 704 F. Supp. 3d at 53. Since then, Congress has assigned additional objectives for the project. *Id.* "Today, the Allatoona Project operates pursuant to its seven authorized project purposes: hydropower, flood risk management, navigation, recreation, water quality, fish and wildlife conservation, and water supply." *Id.* (internal quotation marks omitted).

The Corps sets forth management plans for each water system under its control (like the ACT Basin) in what is called a "master manual," while individual "water control manuals" govern specific projects (like the Allatoona Project). *Id.* at 51. Together, these manuals establish how the Corps should operate water systems and projects to "balance conflicting purposes" and ensure

3

"proper management of reservoirs during times of high water, low water, and normal conditions." *Id.* The original master manual for the ACT Basin was promulgated in 1951, and the individual water control manuals for each project within the ACT Basin were "completed as [the various] projects came on line." *Id.* In 2015, the Corps revised the ACT Basin master manual for the first time in more than half a century, prompting Alabama to sue and initiating the first phase of this lengthy litigation. *Id.* at 44; *see infra*, Part II.A.[1]

## C.     Pre-2018 Operations at the Allatoona Project

At multipurpose storage reservoirs like the Allatoona Project, the Corps divides the reservoir into separate storage pools. AR 5293. At the base of the reservoir is "inactive storage," which is used to account for sediment accumulations over time. AR 5293-94. The Corps typically does not use or access inactive storage. AR 5293-94. At the Allatoona Project, the inactive storage has a volume of 68,006 acre-feet. AR 5269.

Above the inactive pool is "conservation storage," which is the primary source of usable water at a reservoir. AR 5293. It can be directed towards hydropower generation, recreation,

---

[1] Due to the ACT Basin's size and the competing interests of its numerous stakeholders, it has been the subject of significant litigation. In 1990, Alabama sued to block the implementation of a storage reallocation plan for the Allatoona Project that would have granted additional water supply to the Cobb County-Marietta Water Authority ("CCMWA"). *See* Compl., *Alabama v. U.S. Army Corps of Eng'rs*, No. 90-CV-1331 (N.D. Ala. June 28, 1990). The Corps never finalized that reallocation. AR 5272. In November 2014, Georgia sued the Corps to compel it to act on Georgia's then-pending water supply request for the Allatoona Project. *See* Compl., *Georgia v. U.S. Army Corps of Eng'rs*, No. 14-CV-3593 (N.D. Ga. Nov. 7, 2014). The court sided with Georgia and ordered the Corps to take final action with respect to Georgia's request. J. & Order, *Georgia*, No. 14-CV-3593 (N.D. Ga. Jan. 9, 2018). In February 2017, the CCMWA filed its own lawsuit against the Corps challenging the storage accounting system it used to determine how much water the CCMWA was entitled to at the Allatoona Project. *See* Compl., *Cobb Cnty.-Marietta Water Auth. v. U.S. Army Corps of Eng'rs*, No. 17-CV-400 (N.D. Ga. Feb. 1, 2017). The parties eventually voluntarily dismissed the case in September 2021. *See* Order, *Cobb Cnty.-Marietta Water Auth.*, No. 17-CV-400 (N.D. Ga. Sept. 14, 2021).

4

water supply, or a variety of other purposes.  AR 5293.  In times of drought, the Corps may release water from conservation storage to benefit downstream users.  AR 5293.  The Allatoona Project's conservation storage has a capacity of 270,247 acre-feet.  AR 5267.

On top of the conservation pool is "flood storage," which is the (usually empty) storage space above the reservoir's normal elevation that can be used to hold excess water.  AR 5294.  This allows the Corps to impound water as necessary to prevent downstream flooding.  AR 5294.  The Allatoona Project's flood storage capacity is 288,606 acre-feet.  AR 5267.  The combination of conservation storage and flood storage makes up a reservoir's "usable storage" (sometimes confusingly referred to as "*total* usable storage")—in this case, 558,853 acre-feet.  AR 5464.  The overall "total storage" (including the inactive pool) is 626,859 acre-feet:

| The Allatoona Project's Storage Capacities, 2018 | |
| --- | --- |
| Flood storage (F) | 288,606 acre-feet |
| Conservation storage (C) | 270,247 acre-feet |
| Inactive storage (I) | 68,006 acre-feet |
| Usable storage (F+C) | 558,853 acre-feet |
| Total storage (F+C+I) | 626,859 acre-feet |

### D.    Georgia's 2018 Water-Supply Request

Beginning in the 1960s, the Corps began contracting with the Cobb County-Marietta Water Authority ("CCMWA") and the City of Cartersville to reallocate 18,539 acre-feet, or roughly 6.9%, of the Allatoona Project's conservation storage for water-supply withdrawals (represented by the vertical blue bar in the diagram below).  AR 5211, 5861.

5



AR 5269. In 2018, Georgia requested an increase in water supply allocations for the CCMWA

and the City of Cartersville to meet future demands. AR 5226. Due to population growth, both

entities had exceeded existing storage agreements at the Allatoona Project in the years leading up

to the request. AR 5247. Georgia's request consisted of two components. First, Georgia asked

the Corps to allocate more reservoir storage from the conservation pool to water supply, increasing

the daily withdrawal from 37.1 million gallons to 94 million gallons through 2050 (an increase of

56.9 million gallons per day). AR 5260, 5276, 24022. Second, it asked to change the Corps' water

accounting methodology—i.e., how the Corps calculated water flowing *into* the Allatoona Project—

so that the CCMWA would receive full credit for any water it returned to the reservoir. AR 24023,

AR 5277. Those returns would primarily come from two sources: the CCMWA's upstream Hickory

Log Creek Reservoir and its water treatment facilities near Allatoona Lake. *See* AR 1.[2]

---

[2] CCMWA designed and built the Hickory Log Creek Reservoir to "hold[] water in reserve for the sole purpose of filling [the] CCMWA's storage in Allatoona Lake when water is needed." AR 4930-31. Combined with releases from the CCMWA's water treatment facilities, these two sources increase the CCMWA's inflows into Allatoona Lake by more than 30 million gallons per day. AR 1047.

Water inflows are divided into two broad categories: "natural inflows" and "made inflows." Natural inflows are ones that are not attributable to human behavior, while made inflows are human driven. *See* AR 5277. Under the Corps' pre-2018 accounting methodology, users only received partial credit for made inflows. AR 5441. Georgia's request would give the CCMWA full credit for its made inflows, thus incentivizing it to release more water from the Hickory Log Creek Reservoir to offset withdrawals from the Allatoona Project. AR 5334. In practical terms, this would enable the Corps to meet more water-supply needs without needing to pull as much from existing storage space.

The Corps chose to consider Georgia's proposal and issued public notice. AR 5436. The Corps identified twenty-two possible action plans to respond to the request, plus a "no action" alternative. AR 3. The no action alternative would maintain the status quo, including the preexisting water-supply allocation of 18,539 acre-feet, or 6.9%, of the Allatoona Project's conservation storage, to Georgia. *See* AR 3. The Corps then issued a draft Feasibility Report and Integrated Supplemental Environmental Impact Statement ("FR/SEIS") in November 2019, AR 16447-730, and a final FR/SEIS in November 2020, AR 5224-6045. Both reports recommended adopting a plan called "Alternative 11," which would meet Georgia's full request of 94 million gallons per day through 2050. AR 5260, 6471, 16582-83, 16585, 16601, 16659. Alternative 11 did *not*, however, adopt Georgia's accounting methodology. AR 4.

To supply the additional 56.9 million gallons per day, Alternative 11 would reallocate an additional 33,872 acre-feet of storage: 11,670 acre-feet would come from flood storage (requiring the Corps to raise the conservation pool by one foot in the summer and one-and-a-half feet in the winter, thereby cutting into flood storage), and 22,202 acre-feet would come from existing conservation storage. AR 16659; 5441. Combined with the preexisting allocation to water supply

7

(18,539 acre-feet, or 6.9%, of conservation), the total water-supply storage would rise to 52,411 acre-feet, or approximately 18.6% of conservation storage (or 9.4% of usable storage). AR 16659; 5441.

Various stakeholders submitted a total of 583 inquiries or comments. AR 5438. Alabama submitted four public comments. AR 8583-89 (draft FR/SEIS); AR 426-431 (final FR/SEIS). First, it argued that the proposed reallocation would require Congressional approval under the WSA because it exceeded the 9% "major operational change" threshold enunciated by the D.C. Circuit in *Southeastern Federal Power Customers, Inc. v. Geren*, 514 F.3d 1316 (D.C. Cir. 2008), *cert. denied sub nom.*, *Georgia v. Florida*, 555 U.S. 1097 (2009). AR 8585. The Corps responded by saying that the WSA does not set a limit for what constitutes a major operational change. AR 8585.

Second, Alabama asserted that, *Geren* aside, the FR/SEIS had failed to conduct any of "the required legal analysis." AR 428, 8583. In a similar vein, Georgia submitted a comment requesting "that the Final SEIS include an additional and specific discussion of the Corps' Water Supply Act legal authority." AR 8572. When the final FR/SEIS did not contain that analysis, Georgia commented that it would be "absolutely appropriate for the Corps to include a fulsome analysis of its legal authority to proceed with the reallocation either in the [Record of Decision ("ROD")] or separately prior to the ROD." AR 423. The Corps acknowledged when it published the final FR/SEIS that it had yet to complete the legal analysis but intended to do so "prior to adopting any alternative" and would "document in the ROD, as appropriate, any relevant conclusions." AR 8583. At the same time, the Corps maintained that the draft FR/SEIS had extensively documented the operational changes and determined that the effects would "be no more than negligible or slightly adverse (or beneficial)" in "virtually all relevant categories." AR 8583.

Third, Alabama argued that the Corps' statutory analysis would need to account for the Corps' preexisting contractual allocations to Georgia (18,539 acre-feet, or 6.9%, of conservation). AR 8585. The Corps "concur[red] that the baseline for evaluating the effects of a proposed reallocation of storage" under the WSA "[was] the congressional authorization for the project, not necessarily current conditions." AR 8585. The Corps "also concur[red] that this evaluation should consider the cumulative total of all storage reallocated at the project under the discretionary authority of the WSA." AR 8585.

Fourth and finally, Alabama urged the Corps to reject Georgia's proposed storage-accounting methodology because the current methodology gave the Corps "the flexibility it need[ed] to operate the reservoir for all project purposes." AR 8587. The Corps acknowledged that if it were to adopt Georgia's methodology, a document similar to a water control manual would be needed for the Hickory Log Creek Reservoir so that it could be operated effectively alongside the Allatoona Project. AR 8587.

### E.    The Corps' 2021 Record of Decision

In August 2021, the Corps issued a ROD granting Georgia's water-supply request. AR 1-7. Instead of adopting Alternative 11, however, the Corps selected Alternative 12 as the final plan. AR 1-7. Alternative 12 still granted Georgia's full request for 94 million daily gallons of water supply, AR 2-3, but—unlike Alternative 11—it *also* implemented Georgia's proposed accounting methodology, AR 1. One hundred percent of all return flows from the CCMWA's water treatment facilities near Allatoona Lake and all releases from the Hickory Log Creek Reservoir would be credited toward Georgia's water-supply storage account. AR 1.

Because of the offsetting inflows from these two sources, Alternative 12 only required an additional water-supply reallocation of 14,159 acre-feet (not 33,872 acre-feet). AR 2. Combined

9

with the preexisting allocation, the total amount of storage space dedicated to water supply would be 32,698 acre-feet (not 52,411 acre-feet), as depicted below.  AR 3.

| Reallocation | Alternative 11 (rejected) | Alternative 12 (adopted) |
|---|---|---|
| Total water supply (*acre-feet*) | 52,411 acre-feet | 32,698 acre-feet |
| Total water supply (*% of conservation storage*) | 18.6% | 12.1% |
| (*% of usable storage*) | 9.4% | 5.9% |
| (*% of total storage*) | 8.4% | 5.2% |
| Additional water supply (*acre-feet*) | 33,872 acre-feet | 14,159 acre-feet |
| Additional water supply (*% of conservation*) | 11.7% | 5.2% |
| (*% of usable storage*) | 6.1% | 2.5% |
| (*% of total storage*) | 5.4% | 2.3% |

The Corps explained that Alternative 12 was preferable because Alternative 11 would have required "reallocation from flood storage" and "any potential increase in flood risk is unacceptable." AR 2.  It also opined that it was "reasonable to defer to the determination of the State on the best way to meet [its] water supply users' needs, especially where doing so [would] not interfere with federal purposes, policies, or law."  AR 4.  With respect to its legal authority under the WSA, the Corps wrote only the following:

> The recommended reallocation of 14,159 ac[re]-f[ee]t from Lake Allatoona falls within the authority of the 1958 Water Supply Act. As explained above and in the FR/SEIS, the reallocation of storage under the Selected Plan would not entail any major changes to the Corps' operation of Allatoona Lake or the ACT system projects for their authorized purposes, and there would be no significant impacts to any authorized project purpose.  Therefore, no major operational change or serious effects occur as a result of the recommended storage

reallocation, and the reallocation can be fully accommodated under the Water Supply Act.

AR 6.

## II.    PROCEDURAL HISTORY

### A.    Phase One: Challenge to the 2015 Master Manual

After the Corps revised its ACT Basin master manual in 2015, Alabama sued to block its implementation.  ECF No. 1.  Alabama argued that the manual's directives with respect to the Allatoona Project violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, and the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*  In 2016, the court consolidated the case with a related lawsuit that had been filed by the Alabama Power Company.  Minute Order, *Ala. Power Co. v. U.S. Army Corps of Eng'rs*, No. 15-CV-699 (D.D.C. July 25, 2016).  Over the course of several years, numerous interested parties—including Intervenor-Defendants Georgia, the Atlanta Regional Commission ("ARC"), and the CCMWA—successfully joined the litigation.  Mar. 31, 2017 Minute Order.

The parties filed motions for summary judgment and completed briefing in late 2017.  *See* Docket, No. 15-CV-696.  While the motions were pending, however, the U.S. District Court for the Northern District of Georgia issued an opinion that had significant implications for the case. *See In re ACF Basin Water Litig.*, 554 F. Supp. 3d 1282 (N.D. Ga. 2021).  The parties jointly agreed to set a new briefing schedule, which the court granted.  Jan. 19, 2022 Minute Order.  The second round of summary-judgment briefing completed in early 2022.  *See* Docket, No. 15-CV-696.

In November 2023, the court granted summary judgment in the Corps' favor and held the 2015 master manual to be lawful under the APA, the NEPA, and the CWA.  *Alabama*, 704 F. Supp. 3d at 161.  One month later, the case was reassigned to the undersigned.  *See* Dec. 14, 2023 Docket Entry.

11

### B.        Phase Two: Challenge to the 2021 Record of Decision

While the parties were busy litigating the 2015 master manual, Alabama sought permission to file a supplemental complaint raising distinct legal issues regarding the 2021 ROD. ECF No. 128. Specifically, Alabama argued that the Corps' reallocation of storage at the Allatoona Project to accommodate Georgia's water-supply request violated the WSA as interpreted by the D.C. Circuit in *Geren*. *Id.*

The court granted Alabama's motion, Nov. 18, 2022 Minute Order, and Alabama docketed its supplemental complaint in November 2022. ECF No. 143. In June 2024, Alabama filed a motion for summary judgment. ECF No. 156. The Corps opposed and cross-moved for summary judgment in August 2024. ECF Nos. 157, 158. Intervenor-Defendants Georgia, the ARC, and the CCMWA did the same in September 2024. ECF Nos. 159, 160, 161, 162. The matter is now fully briefed. ECF Nos. 164 to 168.

### III.    LEGAL STANDARDS

Under the APA, a court shall "set aside agency action, findings, and conclusions" if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). To pass muster, an agency's action must be "reasonable and reasonably explained." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). The court must ensure that the agency "considered the factors relevant to its decision and articulated a rational connection between the facts found and the choice made." *In re Polar Bear Endangered Species Act Listing & Section 4(d) Rule Litig.*, 709 F.3d 1, 8 (D.C. Cir. 2013) (quoting *Keating v. Fed. Energy Reg. Comm'n*, 569 F.3d 427, 433 (D.C. Cir. 2009)). An agency acts arbitrarily and capriciously if it "relie[s] on factors which Congress has not intended it to consider, entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation for its decision that runs

12

counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 997-98 (D.C. Cir. 2008)).

In cases proceeding under the APA, the usual summary judgment standard under Federal Rule of Civil Procedure 56 does not apply "because of the court's limited role in reviewing the administrative record." *Albino v. United States*, 78 F. Supp. 3d 148, 163 (D.D.C. 2015). The court may only review the record "that was before the [agency] at the time [it] made [its] decision." *Am. Wildlands*, 530 F.3d at 1002 (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Albino*, 78 F. Supp. 3d at 163 (quoting *Occidental Eng'g Co. v. Immigr. & Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir. 1985)). "Summary judgment thus serves as the mechanism for deciding . . . whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.*

## IV.    DISCUSSION

The legal challenges in this case can be broken into three main issues.[3]  First, the court considers whether the D.C. Circuit's decision in *Geren* conclusively establishes that the 2021 ROD

---

[3] Alabama asserts, and the Corps does not contest, that Alabama has standing to challenge the 2021 ROD.  Alabama's Opening Br., ECF No. 156, at 17-18.  The court agrees.  The Corps' adoption and implementation of the 2021 ROD threatens to decrease the water available to downstream users, which is sufficient to show injury in fact.  Additionally, that harm is fairly traceable to the ROD and a ruling in Alabama's favor would block it from going into effect.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (explaining that standing requires (1) a concrete and particularized injury that is actual or imminent; (2) a causal connection between the injury and the challenged conduct; and (3) a non-speculative likelihood that the injury will be redressed by a favorable court decision).

violated the WSA.  Next, the court analyzes the language and context of the WSA to determine whether the 2021 ROD exceeded the Corps' statutory authority.  Finally, the court considers whether the Corps' issuance of the 2021 ROD was otherwise arbitrary and capricious in violation of the APA.

### A.    *Geren* Does Not Conclusively Dictate the Outcome of This Case

Ordinarily, when a party challenges agency action as exceeding statutory authority under the APA, the court examines the statute's provisions, interprets its language, and decides whether the agency has acted within the bounds of the law.  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).  According to Alabama, however, *Geren* provides a simple shortcut for this analysis.  It argues that the D.C. Circuit has already done the court's work by setting a clear, "major operational change" threshold that the 2021 ROD "unambiguously" crosses.  ECF No. 156, at 21 (quoting *Geren*, 514 F.3d at 1325).  The court disagrees.

As an initial matter, it is axiomatic that all opinions issued by the D.C. Circuit are binding on this court.  To the extent that any D.C. Circuit opinion squarely applies to a case before the district court, the district court is compelled to follow that opinion.  *Lieu v. Fed. Election Comm'n*, 370 F. Supp. 3d 175, 186 (D.D.C. 2019), *aff'd*, No. 19-5072, 2019 WL 5394632 (D.C. Cir. Oct. 3, 2019) (per curiam).  None of the parties dispute this general principle.  *See* Corps' Opening Br., ECF No. 158, at 26.  Instead, the Corps and Intervenor-Defendants debate whether *Geren* controls the outcome in this *particular* case.  The question is not whether *Geren* is relevant, informative, or helpful; the question is "what *Geren* [actually] held," Corps' Reply Br., ECF No. 166, at 5 (emphasis omitted), and whether that holding has determinative authority here, *see Cactus Canyon Quarries v. Fed. Mine Safety & Health Rev. Comm'n*, 820 F.3d 12, 18 (D.C. Cir. 2016) (explaining that the "precedential value of a decision is defined by the context of the case from which it arose,"

14

meaning that "the holding of [an] earlier case cannot control [a later case]" if they are "materially or meaningfully different" (quoting *UC Health v. Nat'l Lab. Rels. Bd.*, 803 F.3d 669, 683 (D.C. Cir. 2015) (Edwards, J., concurring))).

### 1.    *Geren* **and Subsequent, Related Developments**

To paint the fullest possible picture, the court discusses *Geren* and two key subsequent developments: *In re MDL-1824 Tri-State Water Rights Litigation*, 644 F.3d 1160 (11th Cir. 2011) (per curiam) ("*Tri-State*"), and the 2012 Stockdale Memorandum.

#### a.    *Southeastern Federal Power Customers, Inc. v. Geren*, 514 F.3d 1316 (D.C. Cir. 2008)

*Geren* concerned a proposed settlement agreement between the Corps, the State of Georgia, a group of Georgian water supply providers, and Southeastern Federal Power Customers, Inc.—a non-profit consortium of rural electric systems deriving significant power from Corps-managed dams. *See* 514 F.3d at 1318; *Se. Fed. Power Customers, Inc. v. Geren*, 301 F. Supp. 2d 26, 30 (D.D.C. 2004), *rev'd*, 514 F.3d 1316 (D.C. Cir. 2008).[4]  The case centered on Lake Lanier, a Corps-operated reservoir in the Apalachicola-Chattahoochee-Flint River Basin ("ACF Basin"), in Georgia. *Geren*, 514 F.3d at 1318.

In 2000, Southeastern Federal sued the Corps to try and stop it from diverting Lake Lanier's water from hydropower generation to water supply. *Geren*, 514 F.3d at 1318.  The district court referred the parties to mediation where, later joined by Georgia and the water suppliers, everyone

---

[4] The unique settlement-agreement posture of *Geren* meant that the D.C. Circuit did not have the benefit of an extensive administrative record, significant evidence of reasoned agency judgment, or even the Corps' interpretation of the operative WSA statute. *See* 514 F.3d at 1327 (Silberman, J., concurring in the judgment) ("Typically we would defer to an agency's interpretation of [an] ambiguous term, but we cannot do so here because we are not reviewing an agency rulemaking or adjudication, but only a settlement agreement (which does not even purport to interpret the crucial language).").

15

agreed that the Corps would allocate up to 240,858 acre-feet (out of 1,049,400 acre-feet)—or 22%—of Lake Lanier's "total storage space" to water-supply purposes for a period of ten years. *Id.* at 1319. At the time the agreement was signed, the Corps had already been allocating 145,460 acre-feet of the reservoir to water supply. *Id.* at 1328 (Silberman, J., concurring in the judgment). The agreement thus called for an additional, or "incremental," 95,398 acre-feet—or 9%—of "total storage space" to be added to the existing water-supply volume. *Id.*[5]

After the parties signed the settlement agreement in early 2003, the States of Alabama and Florida intervened to block it, arguing that the reallocation exceeded the Corps' statutory authority under several statutes, including the WSA. *Id.* at 1320 (majority opinion). The district court rejected Alabama's and Florida's arguments. *Id.* On appeal, Alabama and Florida reasserted their argument that the allocation of nearly 241,000 acre-feet of storage space constituted a "major operational change" for which Congressional approval was required under the WSA. *Id.* at 1322.[6] The D.C. Circuit agreed (Judge Rogers and then-Judge Kavanaugh formed the majority, while Judge Silberman concurred in the judgment). *Id.* at 1318.

In reaching its conclusion, the majority relied on two analytical documents that the Corps had previously prepared. The first, a 1989 Post-Authorization Change Report, opined that reallocating 207,000 acre-feet—or 20%—of Lake Lanier's "total current storage" might require Congressional approval under the WSA. *Id.* at 1323. The second, a 2002 Memorandum, observed that a reallocation request of 370,930 acre-feet—or 35%—of Lake Lanier's "total storage" would

---

[5] The precise mathematical figures in *Geren* were 22.9% (cumulative) and 9.1% (additional) of conservation storage, respectively. Because the *Geren* Court and the parties here shorten these figures to 22% and 9%, this court will do the same.

[6] At the time, the "major structural or operational change" provision of the WSA was codified at 43 U.S.C. § 390b(d). Congress has since relocated it to subsection 390b(e). *See* Water Resources Reform and Development Act of 2014, Pub. L. 113-121, § 1046(d), 128 Stat. 1198 (2014).

"involve substantial effects on project purposes and major operational changes" necessitating Congressional approval under the WSA. *Id.* Based on these two documents, the majority concluded that, "[o]n its face, . . . reallocating more than twenty-two percent (22%, approximately 241,000 acre feet) of Lake Lanier's storage capacity to local consumption uses . . . constitutes the type of major operational change referenced by the WSA." *Id.* at 1324.

While the Corps had asked the D.C. Circuit to focus on the 9% change from the status quo, the majority explained that "the appropriate baseline for measuring the impact of the Agreement's reallocation of water storage [was] zero, which [had been] the amount allocated to storage space for water supply when the lake began operation." *Id.* In other words, the majority appeared to focus on the *cumulative* allocation for water supply (22%), rather than the incremental reallocation (9%). That said, the majority went on to explain that "[e]ven a nine percent (9%, approximately 95,000 acre feet) increase over 2002 levels for twenty years [was] significant," because that change "would be the largest acre-foot reallocation ever undertaken by the Corps without prior Congressional approval." *Id.* And while the majority acknowledged that "[i]n other circumstances it is conceivable that the difference between a minor and a major operational change might be an ambiguous matter of degree," it held that the reallocation in the proposed settlement unambiguously qualified as a major operational change for which Congressional approval was required under the WSA. *Id.* at 1325 (citation omitted).[7]

_____

[7] Because the Court's opinion focused entirely on the "major structural or operational" language of the WSA, it did not consider whether the reallocation would "seriously affect" Lake Lanier's original purposes. *See Geren*, 514 F.3d at 1322 n.2 ("The court . . . has no occasion to consider whether Alabama and Florida would have standing to challenge the Agreement as 'seriously affect[ing]' the original Congressionally authorized purposes of Lake Lanier." (second alteration in original)).

17

Judge Silberman concurred in the judgment but disagreed with how the majority defined the appropriate "baseline" for measuring operational change. He "fundamental[ly] disagree[d]" with a baseline "storage of zero," and instead evaluated the magnitude of reallocation "compared to the [preexisting] allocation." *Id.* at 1327-28 (Silberman, J., concurring in the judgment). In his view, reallocating "approximately 9% more of Lake Lanier's total capacity" was enough "to constitute a 'major operational change,'" even without considering the cumulative 22% figure. *Id.*

b.    *In re MDL-1824 Tri-State Water Rights Litigation*,
644 F.3d 1160 (11th Cir. 2011) (per curiam)

After the D.C. Circuit remanded *Geren* to the district court, the United States Judicial Panel on Multidistrict Litigation transferred the case to the U.S. District Court for the Middle District of Florida. *See* Letter, *Se. Fed. Power Customers, Inc. v. Caldera*, No. 00-CV-2975 (D.D.C. Aug. 11, 2008), ECF No. 223. Once there, the case was consolidated with other cases that would eventually be appealed as *In re MDL-1824 Tri-State Water Rights Litigation*, 644 F.3d 1160 (11th Cir. 2011) (per curiam).

In *Tri-State*, the Eleventh Circuit offered its own reading of *Geren*—albeit in the context of collateral estoppel. *Id.* at 1201-05. Despite the *Geren* Court's focus on percent reallocation as a metric for major operational change, the Eleventh Circuit observed that "the question of whether percent reallocation of storage is the correct or sole measure of operational change *was not actually litigated*" in *Geren*. *Id.* at 1203 (emphasis added). The parties had simply assumed that the relevant metric was percent allocation, and "the *Geren* court made the same assumption in its opinion[s] without any discussion of the issue." *Id.* The Eleventh Circuit thus held that it was not "bound by collateral estoppel to hold that percent reallocation of storage is the only appropriate measure of operational change," and it concluded that the Corps was free to "determin[e] the appropriate

18

measure of operational change on the basis of its own expertise," without needing to examine percent allocation in isolation.  *Id.*

<em>c.</em>    2012 Stockdale Memorandum

The Eleventh Circuit ultimately remanded *Tri-State* to the Middle District of Florida.  644 F.3d at 1205.  Following the remand, the Corps' Chief Counsel, Earl H. Stockdale, drafted a legal memorandum analyzing the Corps' authority to reallocate portions of Lake Lanier to water supply.  AR 4694-741.  Informed by *Geren*, *Tri-State*, and other relevant cases, Mr. Stockdale undertook both a general assessment of the WSA and the particular characteristics of Lake Lanier.  He began by observing that "Congress intended for the Corps to . . . assume an active role" in managing municipal and industrial water supplies.  AR 4727.  He then considered the meaning of the terms "seriously" and "major" in 43 U.S.C. § 390b(e) and concluded that they referred to modifications "that fundamentally depart from Congressional intent for a project, as expressed through the authorizing legislation relevant to that project."  AR 4728.

In deciding whether any given water supply request would require Congressional approval, Stockdale wrote that the request would need to be "evaluate[d] . . . in its totality."  AR 4729.  As a result, "the amount or percent of storage contracted for . . . [would not be] determinative of whether a proposed action w[ould] result in major structural or operational change or seriously affect authorized purposes."  AR 4730; AR 4730 n.163 (observing that "Congress chose not to specify any number in connection with [the] limits" on the Corps' unilateral authority).  The proper

19

measure, he explained, would be "the actual operational changes and impacts to project purposes that would result from accommodating the projected withdrawals and returns."  AR 4731.[8]

### 2.    Whether *Geren* is Dispositive

After carefully reviewing *Geren*, the court agrees with the Corps and Intervenor-Defendants that it does not impose an across-the-board numerical threshold for what constitutes a "major structural or operational change" in every conceivable circumstance under the WSA. While Alabama asks this court to read "22%" and "9%" and call it a day, Alabama's Opening Br., ECF No. 156, at 18-19, such a simplistic approach contradicts the way the WSA was drafted, is in tension with the logic of *Geren*, and fails to reckon with subsequent persuasive authorities.

Begin with the WSA.  If Congress had wanted the WSA to impose strict, numerical thresholds for detecting a "major operational change," it "easily could have drafted language to that effect." *Gallardo ex rel. Vassallo v. Marstiller*, 596 U.S. 420, 429 (2022) (quoting *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014)).  This rationale is reinforced by the fact that Congress *did* set percent limits in another part of the same statutory provision: the WSA caps the expenditures "allocated to anticipated future demands" for water supply to "30 per centum of the total estimated cost of any project."  43 U.S.C. § 390b(b); *see* Pub. L. No. 116-260, § 402(d), 134 Stat. 2615, 2742 (2020) (establishing, as a "special rule" for the Willamette Valley Project, that the Corps "may reallocate not more than 10 percent of overall storage in the joint conservation pool . . . without further congressional action").  The court generally does not assume that Congress omitted requirements that it meant to impose, especially "when Congress has shown elsewhere in

---

[8] Seemingly in direct reference to *Geren*, Mr. Stockdale went on to criticize courts and litigants that had "focused too narrowly upon the amount of acre-feet or the percentage of storage proposed for 'reallocation' under the Water Supply Act."  AR 4731.

the same statute that it knows how to make such a requirement manifest." *Jama v. Immgr. & Customs Enf't*, 543 U.S. 335, 341 (2005). Congress's decision to leave Section 390b(e) open-ended implies that it recognized the nuances of reservoir management, the unique attributes of different systems, and the impracticality (and imprudence) of a one-size-fits-all approach. This court will not mathematically ossify all future assessments of "major operational changes" when Congress itself chose not to.

The same is true of *Geren*. Throughout the opinion, the *Geren* Court was careful to limit its analysis to Lake Lanier—an entirely different reservoir in a different river basin. *See* 514 F.3d at 1324 ("twenty-two percent . . . of Lake Lanier's storage capacity"); *id.* at 1325 ("twenty-two percent (22%) of Lake Lanier's storage space" and "nine percent (9%) of Lake Lanier's storage space"). At no point did the Court suggest that it was setting forth a numerical definition for the phrase "major . . . operational change" in the WSA, or that its decision applied with equal force to the countless nationwide projects not directly at issue in that case. Instead, the Court recognized that the Corps had previously determined that a 20% reallocation of Lake Lanier's total storage would constitute a major operational change under the WSA, and then it held the Corps to that determination. *Id.* at 1323-24. In doing so, the Court acknowledged that "[i]n other circumstances it is conceivable that the difference between a minor and a major operational change might be an ambiguous matter of degree." *Id.* at 1325.

If the WSA and *Geren* were not enough, consider that courts interpreting *Geren* have refused to read it so rigidly. As the Eleventh Circuit explained in *Tri-State*, the question "whether percent reallocation of storage is the correct or sole measure of operational change was not actually litigated [in *Geren*]." 644 F.3d at 1203. For that reason, it declined to hold that percent allocation was the sole criterion for determining whether an operational change was "major" under the WSA.

21

*Id.* at 1203-04; *see In re ACF Basin Water Litig.*, 554 F. Supp. 3d 1282, 1300 (N.D. Ga. 2021) ("The Court agrees with the Defendants that Alabama does not sufficiently show why the size of a storage reallocation in isolation gives any useful information about the operational changes of the reallocation."); *see also In re ACF Basin Water Litig.*, 554 F. Supp. 3d at 1300 (concluding that "[n]othing [in *Geren*] precluded the Corps from later determining the appropriate measure of operational change based on its own expertise").

Managing water systems requires a careful "balance [of] conflicting purposes" and "competing interests." *Alabama*, 704 F. Supp. 3d at 51, 94. Each reservoir, dam, and river basin is unique and requires a tailored approach. Congress could have easily reduced Section 390b(e) to numerical metrics, but it did not. Congress also could have instructed the Corps to consider just one criterion in the major-operational-change analysis, but it did not do that either. While percent allocations may be a useful proxy for major operational change in certain circumstances, focusing on percentages alone does not do justice to the complexity of the Corps' tasks or the language of the WSA. And fixating on that one metric at a *different* reservoir than the one in this case would be misguided. For these reasons, the court declines to turn the D.C. Circuit's holding about Lake Lanier into a stiff, categorical rule. Accordingly, *Geren* does not provide Alabama with a shortcut to victory.

### 3.    Whether *Geren* is Persuasive

When a case is not binding, it may nonetheless be persuasive. But even if the court were to apply *Geren*'s percentages, Alabama still would not prevail. Properly contextualized, the percentage allocations in *Geren* were, in fact, larger than the percentages here. To understand why this is so requires a deeper dive into the numbers. Each time the *Geren* Court mentioned its numerical holdings, it spoke in terms of Lake Lanier's "total" storage. At various points, the Court alternated

22

between "total storage space," "total capacity," "storage space," and "storage capacity." *See Geren*, 514 F.3d at 1319 ("Lake Lanier's storage space is 1,049,400 acre-feet"); *id.* at 1320 ("twenty-two percent (22%) of the total storage space"; "approximately nine percent (9%) more of the total storage space"); *id.* at 1324 ("twenty-two percent . . . of Lake Lanier's storage capacity"; "twenty-two (22%) of total storage"); *id.* at 1328 (Silberman, J., concurring in the judgment) ("9% more of Lake Lanier's total capacity"). The Court never defined any of these terms. As explained above, *supra* Part I.C, the Corps separates reservoirs into various pools, all of which comprise different portions of storage. The three main pools are the flood pool, the conservation pool, and the inactive pool. *See* AR 5293-94. "Total storage" normally refers to the "combined storage in all three pools," *see* AR 5266, while "usable storage" refers to the combination of the flood and the conservation pools, AR 5464.

As the Corps points out, as Alabama admits, and as the record demonstrates, the *Geren* Court's references to "total storage" actually referred to total *conservation* storage. *See* AR 4731 n.164 ("[T]he D.C. Circuit determined that a reallocation of 22 percent of 'total storage' at Lake Lanier—which was actually a reallocation of 22 or 22.9 percent of *conservation* storage, 14.3 percent of *usable* storage, and 12.6 percent of *total* storage—amounted to 'major operational change[.]'" (citation omitted)); Alabama's Opening Br., ECF No. 156, at 19 n.1. The true volume of total storage at Lake Lanier was 2,554,000 acre-feet, not the 1,049,400 acre-feet identified in *Geren*. *Compare* AR 4712 n.72 ("In fact, the 'total storage' of Lake Lanier, including flood control, conservation, and inactive storage, is 2,554,000 acre-feet, of which the 240,858 acre-feet at issue in *Geren* comprises 12.6 percent, not 22 or 22.9 percent."), *with Geren*, 514 F.3d at 1319 ("Lake Lanier's storage space is 1,049,400 acre-feet."), *and* 514 F.3d at 1328 (Silberman, J., concurring in the judgment) ("The total storage capacity of Lake Lanier is 1,049,400 acre-feet.").

23

It is unclear whether the D.C. Circuit was aware of this distinction because it did not mention or distinguish between flood, conservation, or inactive storage. *See generally Geren*, 514 F.3d 1316. There are two possible ways to interpret this uncertainty. The first is that the *Geren* Court understood "total storage" in the ordinary sense of the term: that it included some combination of the flood, conservation, and inactive pools (rather than just the conservation pool). In other words, the Court erroneously *thought* it was discussing total storage when it was *in fact* discussing conservation storage. The Corps' opposition to Georgia's petition for certiorari suggests as much:

> The [D.C. Circuit] appears to have confused the conservation storage in Lake Lanier with the total storage in the reservoir. As a result, the court incorrectly stated that the proposed reallocation constituted either 22% or 9%, depending on the baseline, of Lake Lanier's "water storage," "storage capacity," or "total storage." In fact, the 22% and 9% figures refer to percentages of "conservation storage" (1,049,400 acre-feet), which is a subset of the "usable storage" (1,686,400 acre-feet), which in turn is a subset of the total water volume contained in the reservoir. . . . The court of appeals therefore erred in calculating the percentage of storage in Lake Lanier that would be devoted to water supply storage under the settlement agreement.

Brief for Federal Respondents in Opposition, *Georgia v. Florida*, 555 U.S. 1097 (2009) (No. 08-199), 2008 WL 4918013, at *5-6. If that were the case, then the *Geren* Court believed that the proposed reallocation was much larger than it actually was. Twenty-two percent of conservation storage (1,049,400 acre-feet) versus twenty-two percent of *total* storage (2,554,000 acre-feet) yields two massively different results. If the Court thought that the Corps intended to reallocate roughly a quarter of Lake Lanier's *entire* volume, that may have played a significant role in its major-operational-change analysis. Had the Court known that—in truth—the reallocation only comprised 14.3% of usable storage and 12.6% of true total storage, the outcome may not have been so "unambiguous[]." *Id.* at 1325.

24

Revisionist conjecture aside, if the *Geren* Court had understood the proposed allocation to be 22% of all storage, then the proposed allocation at the Allatoona Project pales in comparison. Here, the 2021 ROD reallocates 32,698 acre-feet within Allatoona Lake, AR 3, which only translates to 5.9% of usable storage and 5.2% of total storage, *see* AR 5794 (listing the Allatoona Project's "total storage capacity" at 626,860 acre-feet). Those are mere fractions of the "major operational change" threshold of 22% identified in *Geren*, and still lower than the incremental 9% threshold.[9] Under this first assumption, Alabama would almost certainly lose by relying strictly on *Geren*'s numbers.

The second, less-likely possibility is that the D.C. Circuit *knew* it was only analyzing conservation storage but did not label it accordingly. But even under this scenario, the Allatoona Project reallocation is still much smaller than the one in *Geren*. The 32,698 acre-feet figure only represents 12.1% of the project's conservation pool, or just over half the proportional reallocation in *Geren* (22%). *See* AR 3. The only way for Alabama to convincingly make its point is by resorting to *Geren*'s alternative 9% threshold.

The parties vigorously debate how to read the 9% figure. The Corps and Intervenor-Defendants argue that it only refers to incremental reallocation, not cumulative reallocation. Corps' Opening Br., ECF No. 158, at 25; Georgia's Opening Br., ECF No. 159, at 11-14; ACR/CCMWA's

---

[9] While the Corps does not advocate for a "major operational change" test that relies solely on absolute numbers, it observes that the reallocation in *Geren* (240,858 acre-feet) dwarfed the reallocation here (32,698 acre-feet). Corps' Opening Br., ECF No. 158, at 37-38. In fact, the *Geren* reallocation almost equals the entire conservation pool at the Allatoona Project (281,917 acre-feet). AR 342. Both the *Geren* majority and concurrence noted that the proposed change "would be the largest acre-foot reallocation ever undertaken by the Corps without prior Congressional approval." 514 F.3d at 1324; *id.* at 1328 (Silberman, J., concurring in the judgment). This court, however, hesitates to place too much weight on these numbers because doing so would encounter the same pitfalls as a strict percentage-based approach. But the stark difference in absolute volume between *Geren* and this case illustrates why applying bright-line rules to different systems makes little sense. *See supra*, Part IV.A.2.

Opening Br., ECF No. 161, at 20-21.  Alabama argues the opposite, claiming that a 9% *cumulative* reallocation would constitute a major operational change under *Geren*.  Alabama's Opening Br., ECF No. 156, at 20-21.  If the Corps and Intervenor-Defendants are correct, then the Allatoona Project reallocation undercuts every single numerical metric from *Geren* (because the *incremental* percent allocation at the Allatoona Project is only 5.2%).  If Alabama is correct, the *cumulative* 12.1% reallocation at the Allatoona Project would exceed *Geren*'s 9% threshold.

The answer depends on the proper baseline for measuring major operational change, which was the main source of disagreement between the *Geren* majority and concurrence.  *See Geren*, 514 F.3d at 1327 (Silberman, J., concurring in the judgment).  The majority held that "the appropriate baseline for measuring the impact of the Agreement's reallocation of water storage is zero, which was the amount allocated to . . . water supply when the lake began operation."  *Id.* at 1324 (majority opinion).  In other words, if the initial Congressional authorization for a project contained no dedicated water-supply, then every allocation above that initial level of zero must factor into the major-operational-change analysis.  Judge Silberman, however, "fundamental[ly] disagree[d]" because the majority's view implied that earlier water-supply allocations were potentially illegal. *Id.* at 1327 (Silberman, J., concurring in the judgment).  It was against this backdrop that Judge Silberman wrote that reallocating "9% *more* of Lake Lanier's total capacity"—above and beyond what had already been allocated—was a "major operational change."  *Id.* at 1327-28 (emphasis added).  Judge Silberman did not appear to have any issue with the preexisting 13% of water-supply allocation.

In three of the four references to "9%" in the *Geren* majority, the Court contextualized the 9% threshold as an incremental increase.  *See id.* at 1319-20 ("nine percent (9%) more of the total storage space than was being allocated . . . in 2002"); *id.* at 1324 ("nine percent . . . increase over

2002 levels"); *id.* at 1324 ("taking the status quo as the consumption level in 2002, the reallocation of approximately nine percent . . . is still significant"). The majority omitted the context just once, stating that "a reallocation of approximately nine percent (9%) of Lake Lanier's storage space" constituted a major operational change and "present[ed] no ambiguity." *Id.* at 1325. While this final articulation—in a vacuum—would support Alabama's broader reading, the court concludes that the Corps and Intervenor-Defendants have the better of the argument. The majority's repeated qualifiers on the 9% threshold and engagement with Judge Silberman's concurrence suggest that "9%" referred to incremental reallocations, not cumulative ones. Reading the two percentage figures together, then, the *Geren* Court held that a 22% *cumulative* allocation or a 9% *incremental* reallocation would constitute a major operational change.[10] In either case, the Allatoona Project reallocation falls well short of those thresholds (12.1% cumulative and 5.2% incremental), as shown below:

| Reallocation metric | *Geren* | The Allatoona Project |
|---|---|---|
| Cumulative acre-feet | 240,898 acre-feet | 32,698 acre-feet |
| Percent of conservation | 22.0% | 12.1% |
| Percent of usable storage | 14.3% | 5.9% |
| Percent of total storage | 12.6% | 5.2% |
| Incremental acre-feet | 95,398 acre-feet | 14,159 acre-feet |
| Incremental increase as percentage of conservation | 9.0% | 5.2% |

---

[10] Even if the court were to side with Alabama on its reading of the 9% figure, this would only be one data point in Alabama's favor. And, as explained above, *supra* Part IV.A.2, reducing the major-operational-change analysis to nothing more than a comparison of percentages would contravene the WSA.

If anything, a comparison between this case and *Geren* suggests that the Allatoona Project reallocation was *not* a major operational change. *Geren*'s use of numerical holdings thus serves the Corps, not Alabama.

### B.    Whether the Corps Exceeded Its Statutory Authority Under the WSA

Having concluded that *Geren* does not militate a decision in Alabama's favor, the court next considers whether the Corps' approximate 33,000 acre-feet allocation exceeded its authority under the WSA. Because Alabama largely hinged its case on the applicability of *Geren*, it has virtually nothing to say here.[11] The court concludes that the Corps did not exceed its statutory authority here.

The WSA requires Congressional approval for reservoir project modifications that "would seriously affect the purposes for which the project was authorized" or "would involve major structural or operational changes." 43 U.S.C. § 390b(e). Congress did not define these phrases, so the court must employ "the traditional tools of statutory construction." *Loper Bright*, 603 U.S. at 403.

The court begins by giving the statutory text its "ordinary meaning . . . at the time Congress enacted the statute." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 277 (2018) (alteration in original) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). This analysis must be done by reading the words together, "not in isolation." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022). The ordinary meaning of "major" when the WSA was enacted was "[o]f a greater value, length,

---

[11] Alabama's opening brief relies almost exclusively on *Geren* and only reckons with the WSA's text when criticizing Mr. Stockdale's 2012 Memorandum. *See* Alabama's Opening Br., ECF No. 156, at 18-31 (briefly discussing, on pages 29-30, the definitions of key terms in the WSA). And its reply brief entirely omits any such discussion. *See generally* Alabama's Reply Br., ECF No. 165; *see also* Corps' Opening Br., ECF No. 158, at 23 ("At bottom, Alabama offers no alternative affirmative reading of the statutory text."); Corps' Reply Br., ECF No. 166 (similar).

age, or the like, than another or others of the same type."  Major, *Webster's New Int'l Dictionary* (2d ed. 1958).  "Serious" meant "grave," "solemn," or "important."  Serious, *Webster's New Int'l Dictionary* (2d ed. 1958).  And "modification" meant "[a] change; an alteration which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact."  Modification, *Black's Law Dictionary* (4th ed. 1951).  Taken together, these terms suggest that Congressional approval is only required when the Corps' contemplated action is substantial and significant.[12]

The degree of that significance is less clear, but the court may "[r]esort to context" to determine the answer.  *Dubin v. United States*, 599 U.S. 110, 119 (2023); *see United States v. Hansen*, 599 U.S. 762, 775 (2023) ("When words have several plausible definitions, context differentiates among them.").  "It is a fundamental canon of statutory construction" that the court analyzes the statute's words "with a view to their place in the overall statutory scheme."  *West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 721 (2022) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).  To fulfill its objectives, the WSA permits the Corps "to impound water for present or anticipated future demand or need for municipal or industrial water" by providing storage "in any reservoir project" it manages.  43 U.S.C. § 390b(b).  Because Congress paired this authorization with the Corps' responsibility to maintain "Federal navigation, flood control, irrigation, [and other] multiple purpose projects," *id.* § 390b(a), the statute grants the Corps relatively

---

[12] Alabama, relying on the Supreme Court's decision in *MCI Telecommunications Corp. v. AT&T*, 512 U.S. 218 (1994), argues that "modify" implies "moderate change."  Alabama's Opening Br., ECF No. 156, at 29-30 (citing *MCI Telecomms. Corp.*, 512 U.S. at 228-29).  That may be true when reading the term in isolation, but Alabama's argument quickly disintegrates when "modification" is itself modified by "seriously" and "major."  The court does not construe words "in a vacuum," *Gundy v. United States*, 588 U.S. 128, 141 (2019) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)), and it would make no sense to say that a "moderate" change could "seriously affect" project purposes or result in "major structural or operational changes."

broad discretion to balance competing interests.  *See In re ACF Basin Water Litig.*, 554 F. Supp. 3d at 1302 ("The Corps has significant discretion to balance the often competing purposes at its multi-purpose reservoirs.").  That discretion necessarily requires careful tailoring to accommodate assorted stakeholders and harmonize different goals.  It would not make sense for Congress to instruct the Corps to undertake these various tasks but simultaneously hamstring the Corps' ability to carry out any of those functions without prior approval.  Reading "seriously affect" and "major structural or operational changes" to convey their mildest possible meanings would put them in tension with the WSA's other directives.

Additionally, as discussed in detail above, *supra* Part IV.A.2, the lack of any manifest limits on the Corps' authority in Section 390b(e) indicates that Congress wanted to give the Corps managerial flexibility.  Congress easily could have imposed strict limits on what the Corps could do absent approval but elected not to.  And because Congress did exactly that in *other* parts of the WSA, its failure to implement similar constraints in Section 390b(e) supports broader discretion with respect to interpreting "serious[] [e]ffect[s]" and "major structural or operational changes." At the very least, it appears that Congress intended for this language to trigger a qualitative, rather than a quantitative, test.

Finally, while the Supreme Court has lessened its weight in recent years, a law's purpose still plays a role in statutory construction.  The court may not "pave over bumpy statutory texts in the name of more expeditiously advancing a policy goal," but it can consider purpose when it "is readily apparent from the [statute]'s text."  *Sw. Airlines Co.*, 596 U.S. at 463 (first quoting *New Prime Inc. v. Oliveira*, 586 U.S. 105, 120 (2019), then quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011)).  Here, Congress expressly "declared [its] policy" that "the Federal Government should participate and cooperate with States and local interests in developing . . .

water supplies in connection with the construction, maintenance, and operation of Federal navigation, flood control, irrigation, or multiple purpose projects." 43 U.S.C. § 390b(a). Instructing the Corps to work hand-in-hand with dozens of states and hundreds of localities to meet water needs necessarily requires significant leeway.[13]

As the Supreme Court has recently affirmed, "Congress has often enacted such [discretion-conferring] statutes." *Loper Bright*, 603 U.S. at 394; *id.* ("In a case involving an agency, of course, the statute's meaning may well be that the agency is authorized to exercise a degree of discretion."). For example, some statutes "empower an agency . . . to regulate subject to the limits imposed by a term or phrase that 'leaves agencies with flexibility.'" *Id.* (quoting *Michigan v. Env't Prot. Agency*, 576 U.S. 743, 752 (2015)). But while this discretion may be broad, it is not limitless.[14] And even for discretionary statutes, the reviewing court must still "independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Id.* at 395.

Now that *Chevron* has been overruled, a court may no longer defer to an agency's interpretation of ambiguous statutory language.[15] *See Loper Bright*, 603 U.S. at 412-13. That said, the court can still "properly resort" to an agency's "body of experience and informed judgment"

---

[13] While the Supreme Court has all but sidelined legislative history as an interpretive tool, it too supports wide latitude for the Corps' management of water systems. *See* S. Rep. No. 85-1710, at 133 (1958) (considering the WSA "one of the most important parts of the bill because of the increasingly acute water shortages" across the country and entrusting the Corps "to develop the best overall use of water resources in river basins in the service of water supply and other needs"); H. Rep. No. 85-1894, at 134-35 (1958) (same).

[14] Alabama asserts that, under the Corps' interpretation, "it is difficult to conceive of any realistic scenario in which the WSA would require the Corps to seek the approval of Congress." Alabama Opening's Br., ECF No. 156, at 31. But the Corps readily admits that anything impeding "prudent reservoir management" would trigger the requirement. AR 4733.

[15] The Corps wisely did not hinge its arguments on *Chevron* deference and disclaims any reliance on it here. Corps' Opening Br., ECF No. 158, at 17 n.4. Instead, the Corps presents the agency's conclusions as informative, rather than authoritative. *Id.* at 29 n.9.

31

when "determining the meaning of statutory provisions." *Id.* at 394. This is especially so when those judgments "rest[] on factual premises within [the agency's] expertise." *Id.* at 402 (second alteration in original) (quoting *Bureau of Alcohol, Tobacco & Firearms v. Fed. Lab. Rels. Auth.*, 464 U.S. 89, 98 n.8 (1983)). The 2012 Stockdale Memorandum, although not binding on this court by any means, *see Loper Bright*, 603 U.S. at 398-99, reflects the Corps' carefully considered understanding of its authority under the WSA. AR 4694-741. In it, Mr. Stockdale concluded that the terms "seriously" and "major" referred to "changes and impacts that fundamentally depart from Congressional intent for a project." AR 4728. He grounded his analysis in the Corps' "decades of managing hundreds of federal multi-purpose reservoir projects with varying operations, size[s], and authorized purposes." Corps' Opening Br., ECF No. 158, at 16. This assessment aligns with and supports the court's aforementioned statutory analysis. And it makes good sense: Congress, having already conferred discretion on the Corps to fulfill the WSA's objectives, would logically require approval when the Corps' modifications might disrupt those objectives.

Here, the Corps determined that allocating a cumulative 12.1% (or an incremental 5.2%) of the Allatoona Project's conservation storage would not interfere with the project's operations and thus would not require Congressional approval. AR 6. To reach this conclusion, the Corps examined the particular characteristics of the Allatoona Project and how increasing water supply would affect its primary functions, like flood risk management and hydropower generation. *See* AR 1-3. Unlike an agency's assessment of statutory language, these expertise-driven factual findings receive an "extreme degree of deference." *Huntsman Petrochemical LLC v. Env't Prot. Agency*, 114 F.4th 727, 735 (D.C. Cir. 2024) (quoting *Miss. Comm'n on Env't Quality v. Env't Prot. Agency*, 790 F.3d 138, 150 (D.C. Cir. 2015) (per curiam)).

32

Because Alabama hitched its wagon to *Geren*, it does little to fight the statute's text on its own terms. The plain language of Section 390b(e), informed by its surrounding context and the rest of the WSA, indicate that Congress gave the Corps flexibility to manage its reservoirs. Congress did not enact a rigid, formulaic approach to the "seriously affect" or "major . . . operational change[]" inquiries, and the court will not impose one. Therefore, Alabama cannot demonstrate that the Corps overstepped its legal authority under the WSA in reallocating 12.1% of the Allatoona Project's conservation pool to meet water supply needs.

### C.    Whether the Corps' Allocation Was Otherwise Arbitrary and Capricious

Alabama next argues that the Corps failed to adequately explain its decision to proceed without Congressional approval on the 2021 ROD. It attacks the Corps' judgment from two angles. First, Alabama claims that the Corps did not consider the full, cumulative allocation at the Allatoona Project in making its assessments. Second, it says that the Corps' legal analysis was woefully deficient even under the 2012 Stockdale Memorandum's framework.

It is well established that judicial review under the arbitrary-and-capricious standard "is deferential, and a court may not substitute its own policy judgment for that of the agency." *Inteliquent, Inc. v. Fed. Commc'ns Comm'n*, 35 F.4th 797, 802 (D.C. Cir. 2022) (quoting *Prometheus Radio Project*, 592 U.S. at 423). A court must "simply ensure[] that the agency has acted within a zone of reasonableness" by "consider[ing] the relevant issues and reasonably explain[ing] the decision." *Prometheus Radio Project*, 592 U.S. at 423. And even when the agency's decision is "of less than ideal clarity," the court will still uphold it if "the agency's path may reasonably be discerned." *Epsilon Elecs., Inc. v. U.S. Dep't of Treasury*, 857 F.3d 913, 924 (D.C. Cir. 2017) (quoting *Casino Airlines, Inc. v. Nat'l Transp. Safety Bd.*, 439 F.3d 715, 717 (D.C. Cir. 2006)).

33

**1.       Whether the Corps adequately analyzed the cumulative reallocation amount**

Alabama begins by arguing that "neither the ROD nor the FR/SEIS assessed the impact of the cumulative water-supply storage reallocations at Allatoona."  Alabama's Opening Br., ECF No. 156, at 32.  If this were true, it would likely pose a problem under the APA.  But the record does not bear out Alabama's concern.

Alabama asserts that the Corps only looked at the effects of the *incremental* allocation at the Allatoona Project while disregarding the fuller picture.  This would be especially problematic because even the Corps itself acknowledged—during the notice-and-comment process—that "the baseline for evaluating the effects of a proposed reallocation of storage is the congressional authorization for the project, not necessarily current conditions."  AR 8585.  As evidence, Alabama cites to the fact that the "no action alternative" incorporated the preexisting storage contracts, which accounted for 6.9% of the Allatoona Project's conservation pool.  Alabama's Opening Br., ECF No. 156, at 33.  Because the "no action alternative" would maintain the status quo, the incorporation suggested that the Corps was only evaluating the impact of reallocations *beyond* that amount.  *Id.* at 32-33.

The record, however, shows that the Corps understood the proper baseline to be Congress's original authorization.  In issuing the 2021 ROD, the Corps "kept in mind the project's original authorization, which [only] authorized the plan for flood control . . . , hydropower, and navigation."  AR 2.  The Corps thus recognized that the project's initial purposes did *not* include water supply, resulting in a baseline of zero.  The ROD was also clear in defining the full scope of the water-supply allocation, noting that, "[c]ombined with existing storage in Allatoona Lake already allocated to water supply, the total storage allocated to water supply would be 32,698 [acre-feet], or approximately 5.85 percent of total usable storage in Allatoona Lake, and 12.1 percent of the conservation storage pool."  AR 3.

34

Besides the ROD, other documents in the record support the conclusion that the Corps was considering the cumulative allocation. For example, the Army Director of Civil Works (at the Corps' headquarters) wrote a memorandum opining that the cumulative 52,411 acre-feet reallocation contemplated in the later-scrapped Alternative 11 plan would not have "involve[d] a fundamental departure from authorized project operations" or "seriously affect[ed] the congressionally authorized project purposes for the Allatoona Lake Project." AR 226. Implicitly, then, a much smaller 32,698 acre-feet reallocation would have had even fewer measurable effects. The Corps also directly responded to comments raising the cumulative-assessment concern by reassuring stakeholders that the "Final FR/SEIS extensively analyzed and documented operational changes, impacts to authorized purposes, and other effects of each alternative *including cumulative effects*, in keeping with applicable laws and regulations." AR 428-29, 431, 441 (emphasis added). And the 2012 Stockdale Memorandum—which specifically addresses Lake Lanier but also guides the Corps' approach to handling reallocation requests more generally—requires the Corps to "first determine the Congressional understanding of the purposes and operation of that project *at the time of authorization*." AR 4712-13 (emphasis added).

Even so, the court acknowledges that the Corps could have done a better job of clearly explaining that it used the correct baseline. For example, the ROD could have expressly said that it was separately analyzing the 32,698 acre-feet reallocation as a cumulative change. But the full extent of an agency's decision need not be "crystal clear." *Casino Airlines*, 439 F.3d at 717 (quoting *Chritton v. Nat'l Transp. Safety Bd.*, 888 F.2d 854, 862 (D.C. Cir. 1989)). And because the court can discern from the record as a whole that the Corps *did* evaluate the reallocation request

from the appropriate baseline, Alabama has not carried its burden on arbitrary-and-capricious review.  *See Epsilon Elecs., Inc.*, 857 F.3d at 924 (quoting *Casino Airlines*, 439 F.3d at 717).[16]

## 2.    Whether the Corps adequately explained the legal basis for its decision

Finally, Alabama laments that the Corps did not conduct a lengthy, independent legal analysis (like the 2012 Stockdale Memorandum) for Georgia's water-supply request.  Alabama's Opening Br., ECF No. 156, at 33-35.  Putting aside the fact that neither the APA nor the WSA requires legal analysis anywhere close to the scale of the 2012 Stockdale Memorandum, the legal basis for the Corps' conclusion is well-supported by the administrative record.

Backed by thorough analysis, factfinding, and experience, the Corps determined that granting Georgia's water-supply request would have little, if any, effect on the Allatoona Project's operations.  It also concluded that Georgia's needs "could be met using either storage accounting method, without requiring any significant changes to the operation of the Allatoona Project and without significantly affecting [any] authorized purposes."  AR 4.

These assessments are patently clear from the record, which is replete with evidence showing negligible or non-significant impacts on the Allatoona Project.  The ROD included a comprehensive table assessing the reallocation's effect on criteria ranging from "aesthetics" and "aquatic resources" to "navigation," "soils," and "water quality."  AR 5.  For each category, the

---

[16] Alabama seems to separately challenge the Corps' adoption of Georgia's storage-accounting methodology.  Alabama's Opening Br., ECF No. 156, at 21-22.  But Alabama does not explain how that adoption would have any structural or operational impact for the Allatoona Project.  And the Corps concluded that "[t]he operation of Allatoona Lake and the federal ACT system would not change in any significant way if the storage accounting method were changed."  AR 367-68.  The new methodology enabled the Corps to meet Georgia's water-supply request without devoting additional storage to that purpose.  *See* AR 1 n.1.  If anything, the methodology—which corrected prior accounting errors and more accurately credited the CCMWA for its inflows into Allatoona Lake—actually *minimized* the operational impact of granting Georgia's request.

36

impact was either insignificant or nonexistent. *Id.* The ROD also incorporated the FR/SEIS, which considered myriad possible environmental effects in exhaustive detail and concluded that none produced more-than-negligible effects. AR 5366-435. The Corps also identified twenty-three courses of action, intensively surveyed fourteen of them, and presented those fourteen for public comment. AR 3; AR 16562-85. It then received 583 comments from various stakeholders and considered them all. AR 5438; AR 5.

In sum, the Corps conducted a comprehensive analysis of Georgia's request and determined that it would have no "appreciable effect" on the project's overall operation. AR 5366. These findings are precisely the type of fact-bound, expertise-laden agency conclusions that are entitled to "extreme" deference under the APA. *Huntsman Petrochemical*, 114 F.4th at 735 (quoting *Miss. Comm'n on Env't Quality*, 790 F.3d at 150); *see Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 193 (1983) (explaining that "a reviewing court must generally be at its most deferential" when examining "predictions [that an agency makes] within its area of special expertise"). And the findings undergirded the Corps' ultimate legal assessment that the reallocation "would not entail any major changes to the Corps' operation of Allatoona Lake or the ACT system projects for their authorized purposes, and [that] there would be no significant impacts to any authorized project purpose." AR 6.

Alabama largely fails to dispute this. *See generally* Alabama's Opening Br., ECF No. 156; Corps' Reply Br., ECF No. 166, at 19 ("Alabama does not dispute that the Corps' substantive factual determination—that it could grant Georgia's water supply request without effecting a 'major operational change' at the Allatoona project—is entitled to deference."). Alabama quibbles with the ROD's depth of analysis, but the analysis it seeks is omnipresent throughout the administrative record.

37

\*          \*          \*

In conclusion, Alabama over-relies on an overreading of *Geren*. It cannot persuasively demonstrate that the D.C. Circuit's decision established a categorical, bright-line rule that dispositively resolves this case in its favor. Such a reading would rigidly expand the Circuit's holding about a single reservoir into a one-size-fits-all approach that contradicts the WSA and defies common sense.

With no path to victory through *Geren*, Alabama is forced to fight the WSA on its own terms, but it comes up short there, too. Under the text of the statute, and in light of the Corps' expert analysis, Alabama cannot show that the Corps' reallocation of water storage at the Allatoona Project required Congressional approval, or that its exhaustive analysis was arbitrary and capricious.

## V.    CONCLUSION

For the foregoing reasons, the court will deny Alabama's motion for summary judgment, ECF No. 156, grant the Corps' cross-motion for summary judgment, ECF No. 158, grant Georgia's cross-motion for summary judgment, ECF No. 159, and grant the ACR's and the CCMWA's cross-motion for summary judgment, ECF No. 161. A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   March 31, 2025

38